UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, et al., <br><br> Defendants. | Case No. 1:01CV02094 (RCL) |

**FILED**

DEC 1 8 2002

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

This action is brought against The Islamic Republic of Iran and its agency, the Iranian Ministry of Information and Security (MOIS), by members of the United States Marine Corps, Navy, and Army, who on October 23, 1983, suffered injuries or died as a result of the detonation of a gas-enhanced explosive device, a bomb, which was loaded into an automobile and crashed into the center lobby of the 24th Amphibious Unit compound located in Beirut, Lebanon. Plaintiffs' complaint alleges that this attack was carried out by Hizballah, a terrorist group under control and sponsorship of the Islamic Republic of Iran and MOIS. In accordance with Section 1605(a)(7) of the Foreign Sovereign Immunities Act (FSIA), this court has subject matter jurisdiction over the claims at issue here.

The Islamic Republic of Iran and MOIS were served pursuant to 28 U.S.C. § 1608. On April 30, 2002, the American Embassy in Bern, Switzerland, transmitted copies and translations of the Summons, Complaint, and Notice of Suit to the Swiss



Foreign Ministry for service of process upon Defendants through diplomatic channels. As indicated in the communication from Edward A. Betancourt of the Bureau of Consular Affairs of the Department of State, dated May 30, 2002, process was served upon Defendants on May 6, 2002. The Islamic Republic of Iran and MOIS have failed to file an answer or responsive pleading, or to enter an appearance.

When a defendant fails to plead or otherwise defend, the court must enter a default. Fed. R. Civ. P. 55(a). "[A] foreign state, political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or responsive pleading to the complaint within sixty days after service have been made...." 28 U.S.C. § 1608(d). The Islamic Republic of Iran and MOIS failed to answer or respond to the Plaintiffs' complaint. Therefore, pursuant to Fed. R. Civ. P. 55(a) and 28 U.S.C. § 1608(d), this Court finds the Defendants to be in default.

This Court may not enter a judgment by default "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Plaintiffs here still have the burden of proving the factual elements of their claims in an evidentiary hearing. Customarily, this Court withholds its opinion setting forth conclusions of law until after the plaintiffs have presented evidence in support of their claims. See, e.g., Flatow v. Islamic Republic of Iran, 999 F. Supp 2d 1, 6 (D.D.C. 1998). In this case, however, the number of Plaintiffs is substantial, making the factual hearings costly and time-consuming. The considerations of judicial economy and expedience dictate that if there are issues of law that could preclude Plaintiffs' claims for recovery, they should be addressed before the Court and the Plaintiffs invest considerable resources into adjudicating questions of fact.

All of the questions of law that arise in this case, with the exception of the issue concerning when and under which circumstances United States military service members may recover under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7), and its subsequent "Flatow Amendment," 28 U.S.C. § 1605 (note), have been previously explicitly addressed and resolved by the U.S. District Court for the District of Columbia. See Flatow. In addition to Flatow, the Islamic Republic of Iran has had at least 10 judgments issued against it under the state-sponsored terrorism exception to the FSIA. See Stethem v. Islamic Republic of Iran, 2002 WL 745776 (D.D.C. 2002); Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13 (D.D.C. 2002); Wagner v. Islamic Republic of Iran, 172 F. Supp. 2d. 128 (D.D.C. 2001); Jenco v. Islamic Republic of Iran, 154 F. Supp. 2d 27 (D.D.C. 2001); Sutherland v. Islamic Republic of Iran, 151 F. Supp. 2d 27 (D.D.C. 2001); Elahi v. Islamic Republic of Iran, 124 F. Supp. 2d 97 (D.D.C. 2000); Higgins v. Islamic Republic of Iran, 2000 WL 33674311 (D.D.C. 2000); Eisenfeld v. Islamic Republic of Iran, 172 F. Supp. 2d 1 (D.D.C. 2000); Anderson v. Islamic Republic of Iran, 90 F. Supp. 2d 107 (D.D.C. 2000); Cicippio v. Islamic Republic of Iran, 18 F. Supp. 2d 62 (D.D.C. 1998). The only question that this Court needs to affirmatively address here is when and under which circumstances United States military members are entitled to recover under the state-sponsored terrorism exception to the FSIA.

A United States military service member's right to recover from a foreign state-sponsored terrorist attack was at issue, but not affirmatively addressed, in at least three other cases. See Stethem v. Islamic Republic of Iran, 2002 WL 745776 (D.D.C. 2002); Wagner v. Islamic Republic of Iran, 172 F. Supp. 2d 128 (D.D.C. 2001); Higgins v.

Islamic Republic of Iran, 2000 WL 33674311 (D.D.C. 2000). In all three cases, the successful plaintiffs were members of United States armed forces and their families who were injured as a result of a state-sponsored terrorist attack. The courts in these cases have, *sub silentio,* recognized United States military personnel's right to recover in the case of state-sponsored terrorist acts. This Court sees no reason to depart from these decisions; it does, however, perceive a need to specifically set forth the criteria warranting such recovery.

The plain language of the state-sponsored terrorism exception to the FSIA does not exclude United States military personnel from the class of plaintiffs who can recover for injuries resulting from an act of state-sponsored terrorism. By enacting section 1605(a)(7) of the FSIA, Congress created a forum in which the victims of terrorist acts can adjudicate their claims against the states that sponsor such acts. See 28 U.S.C.A. § 1605(a)(7); Elahi v. Islamic Republic of Iran, 124 F. Supp. 2d 97 (D.D.C. 2000) (citing Daliberti v. Islamic Republic of Iraq, 97 F. Supp. 2d 38, 50 (D.D.C 2000)). Congress also enacted the "Flatow Amendment," 28 U.S.C. § 1605 (note), which provided the federal preemption of state and foreign laws in actions brought pursuant to the state-sponsored terrorism exception to the FSIA, and listed the types of damages available to plaintiffs. The only explicit limitation on the class of plaintiffs contained in the state-sponsored terrorism exception to the FSIA is the requirement that either the plaintiff or the victim of a terrorist attack be a United States national. Flatow at 16.

Congress affirmed its intent to include United States military personnel in the class of plaintiffs who may recover under the state-sponsored terrorism exception to FSIA by passing a Victims of Trafficking and Violence Act of 2000, which mandated

that the Treasury Department pay the victims described in the statute out of funds secured against the assets of state sponsors of terrorism. Among the cases explicitly benefiting from this legislation were Higgins and Stethem. By including the Higgins and Stethem families in the class of individuals the government was assisting in recovering damages, Congress demonstrated its approval of the U.S. District Court's for the District of Columbia decisions in military service member cases.

Congress had two clear goals behind the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act: (1) deterring terrorism, and (2) accomplishing such deterrence by stripping the states that sponsor terrorism of their foreign sovereign immunity and forcing them to compensate the victims of the terrorist acts they sponsor. Flatow at 16. As the goal of Congress was to deter international terrorism by compensating its victims, it is necessary to determine whether the act that caused injury to a plaintiff was, in fact, an act of terrorism. Congress has defined terrorism as follows: "premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents...." 22 U.S.C. § 2656f(d)(2). Congress's definition of "terrorism" makes it clear that a violent act that caused injury to a service member in a combat situation would not qualify as terrorism, and such injury, therefore, would not constitute grounds for recovery under the state-sponsored terrorism exception to the FSIA.

"Combatants are members of armed forces who have the right to participate directly in hostilities." See Brian D. Tittemore, Belligerents in Blue Helmets: Applying International Humanitarian Law to United Nations Peace Operations, 33 Stan. J. Int'l L. 61, 66 (1997). To ascertain whether service members have the right to participate

directly in hostilities, one must look to military rules of engagement, the directives that define the circumstances and limitations under which forces may participate in military combat. See Chairman, Joint Chiefs of Staff Instr. 3121.01A, Standing Rules of Engagement for U.S. Forces (15 Jan. 2000). The Plaintiffs allege that the United States military service members at issue in this case were a part of a peacekeeping mission and operated under peacetime rules of engagement. Therefore, the Court finds that if the Plaintiffs prove this factual allegation, they will qualify for recovery under the state-sponsored terrorism exception as noncombatants.

Where U.S. nationals are in government service at the time of a state-sponsored terrorist attack, courts should defer to an agency's official determination of the cause of injury or death, if such determination exists. Such deference is appropriate "…so long as there is no basis to suspect that the agency's position represents anything less than its considered opinion." Bigelow v. Department of Defense, 217 F.3d 875, 878 (D.C. Cir. 2000). Here, the Plaintiffs allege, by a Report of Casualty (DD Form 1300), that the Department of Defense listed terrorist attack as the cause of death of the United States military service members in this case. The military has specially prescribed rules for determining the cause and nature of injuries and deaths that occurred while on duty. Army Reg. No. 600-33 (16 December 1974) (Line of Duty Investigations). This court finds that if the Plaintiffs show at their hearing on liability that such determination was, in fact, made by the Department of Defense, this Court will defer to it.

## Conclusion

The United States military force is a symbol of the nation's power. It embodies everything that is resented by the enemies of this country. It is not surprising that United

States military service members are frequent targets of international terrorists. Failure to permit military service member recovery would create a perverse incentive for state sponsors of terrorism to target noncombatant U.S. military personnel. This Court finds that where the members of the United States armed services are able to demonstrate that they sustained injuries from a terrorist act while noncombatants, operating under peacetime rules of engagement, they are eligible to recover damages under the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act.

Date: 12-18-02

Royce C. Lamberth
United States District Judge