# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**FILED**

**DEBORAH D. PETERSON**
**Personal Representative**
**Of the Estate of**
**James C. Knipple (Deceased), et al.**
      **Plaintiffs**

AUG 1 4 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

      v.

                    **Civil No.1:01CV02094**
                    **Judge Royce C. Lamberth**

**THE ISLAMIC REPUBLIC OF IRAN, et al.**
      **Defendants**

**JOSEPH AND MARIE BOULOS**
**Personal Representative**
**Of the Estate of**
**Jeffrey Joseph Boulos (Deceased), et al.**
      **Plaintiffs**

      v.

                    **Civil No.1:01CV02684**
                    **Judge Royce C. Lamberth**

**THE ISLAMIC REPUBLIC OF IRAN, et al.**
      **Defendants**

## ORDER

Upon consideration of the qualifications as set forth in the attached curriculum vitae and the Acceptance of Appointment as Special Master, it is this _14th_ day of _August_, 2003, by the Court

**ORDERED,** that Howard P. Rives, Esq. is hereby appointed a Special Master of this Court in accordance with the Amended Administrative Plan Governing Special Masters.

Royce C. Lamberth
**United States District Judge**

CC:
Thomas Fortune Fay, Esq.
601 Pennsylvania Avenue, NW
#900 – South Building
Washington, DC  20004

Steven R. Perles, Esq.
1615 New Hampshire Avenue, NW
Suite 200
Washington, DC  20009

FILED

AUG 1 4 2003

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

Howard  Pendleton  Rives,  Jr.   Curriculum  Vitae  2002

Personal :   Howard  Pendleton  Rives  Jr.  was born  September  20 1923 at  Shelbyville,

Kentucky,  a  resident  of  Pinellas  County  Florida  since  1924,  and  engaged

in  the practice  of  Law  from  February  11,  1949  until  1985  when  he was

appointed  Circuit  Judge,  by  then  Govenor  Bob  Graham.  He  is  married  to

Browder  Walker  Rives,  a native  of  Mobile,  Ala.  His  children  are  Howard

P.  Rives  111  of  Clearwater,  Fla.  and  Nancy  Rives  Sams  of  Simpsonville,

Ky  and  two  Step-Children  James  Robert  Boykin  Jr  (Deceased }  and  Grace

Boykin  of  Palm  Harbor,  Fla.

Education:   With  primary  education  in  Clearwater  and  Dunedin,  Fla.  he attended  Florida

Military  Academy  in  St.  Petersburg  in 1936  to  1939  and  Shelbyville  High

School,  Shelbyville,  Ky.  1939  to  1941.  Entering  The  Citadel  at  Charleston

S. C.  for  the  academic  year  1941-42,  in  June  1942  he  attended  the Summer

Sessions  at  University  of  Florida  until  November  1942  at which time he entered

the  Armed  Service  as a  reservist  called  to  active  duty.  Returning  from

Active  Duty  in  March  1946  he  attended  The  University  of  Kentucky  for

the Spring  Quarter  and  entered  The  College  of  Law  in  July  1946  of  U.  of

Ky  transferring  to  University  of  Florida  College  of  Law ,  graduating  in

January  1949  with  an  LLB  Degree,  which  the  university  changed  to  a

Juris  Doctor  Degree  (J. D.)  in 1967.  Retiring  as an  Active  Circuit  Judge

in  January  1993,  service  has been  continued  on  the  bench  as  needed as

a  Senior  Judge ,  fulfilling  all  Continuing  Legal  Educational  requirements

identical  to  that  of  active  judges.

Miscellaneous
Social  and  Service
Memberships:
    Phi  Kappa  Tau  Fraternity;  Phi  Delta  Phi  Honorary  Legal  Fraternity;  Clear-

(2)

water Lodge # 127, F. & A. M., Past member of Tampa Consistory and Egypt Temple Shrine, Past Member of Carlouel Yacht Club ( Board of Govenors 1980-83), Belleair Country Club Golf Member, Past member and Director of Harborview Club, The Donald Roebling Society, member of Rotary Club of Clearwater since l950, Sons of the American Revolution, Past member of Florida and Pinellas County Historical Societies, present member Dunedin Historical Society, Past member, director and Vice-President of the Clearwater Chamber of Commerce, Past Director and President (l984-85) of The Morton F. Plant Hospital Foundation, Life member of the 94th Infantry Division Association and Past member of its executive council, member of the 301st Infantry Association since World War 11, Past member and Deacon in Peace Memorial Presbyterion Church, member and Past Chairman Board of Deacons and Life Elder of First Presbyterion Church of Dunedin and Associate member of Harvest Temple.

Professional Memberships
Past and Present:

The Florida Bar; The American and Clearwater Bar Accociations (President 1951) The American Judicature Society; Association of Trial Lawyers of America; The Academy of Florida Trial Lawyers; Pinellas County Trial Lawyers Association; Member of the Board of Govenors of the Florida Bar (1970-74); Chair of the Florida Bar Disciplinary Proceedures Committee 1973-74; Budget Committee 1972; Board Liason Member of the Rules of Civil Proceedure Committee; Author of Chapter 20 of the original Florida Bar Probate Manual; Life member and eight year member of Florida Bar Foundation Board of Directors, President 1983; Member of Lawyers Title Guaranty Fund since l950; Member Sixth Circuit Grievance Committee 1958 to l970; Martindale AV and Bar Register in private practice; Florida Conference of Circuit Judges 1985 to date.

Business:

Former Director Sun Bank/ Suncoast and its predecessor First National Bank of Dunedin, member of Executive and Loan Committee, also the Trust Committees thereof. Member of The Paul Tulane Society of Tulane University and The Presidents Council University of Florida; Co-Trustee of the John T. and Winifred M. Hayward Charitable Foundation for Medical Research.

Miscellaneous:

Seventeenth Recipient of the Medal of Honor of The National Society of the Daughters Of The American Revolution ; 1989 award of the Silver Good Citizenship Medal of Sons of The American Revolution, Clearwater Chapter.

Military Service:

Enlisted in the Enlisted Reserve Corps Nov 9, l942 at Gainesville Fla. Called to Active Duty Ft Hayes Ohio Jan. 15, 1943, assigned for basic training Camp Wheeler Georgia. Selected as one of 26 men, from 3000 applicants for Officer Candidate School at Fort Benning Ga., promoted to Corporal May 1943, graduating Sept 3, 1943 in Class 292 as a Second Lieutenant Infantry. After 10 day delay en route granted all graduates, Reporting to Ft. McClellan Alabama, reassignment was made to report to 94th Infantry Division, Camp Forrest Tennessee for field maneuvers. Being then assigned to the 301st Infantry, First Batallion, Company "D", which was

(3)

the Heavy Weapons Company, I found a home as a platoon leader of the second Machine Gun platoon. From maneuvers ending in November, the unit was assigned to further training to Camp McCain at Grenada, Mississippi. In June orders were received to prepare for overseas movement, destination unknown. Final inspections, resupply of equipment led to Camp Shanks New York, loaded aboard The Queen Elizabeth with some 17500 persons aboard, the Division was transported to Scotland and transported by rail in August to the area of Bath awaiting shipment to France. The wait was not long in coming and boarding channel steamers, we were deposited on Utah Beach in LCI's while vehicles went to Omaha Beach in very rough weather. From the beach , under air cover the foot units with full field packs and hand carried equipment were hurriedly marched to inland assembly areas (bare fields) complete with obstacles left by the germans and surrounded by hedge-rows. The unit was designated to relieve the Sixth Armored Division at the front of the port cities under siege, St. Nazaire and Lorient where approximately a hundred thousand Nazi soldiers, sailors and marines were "holed up" with almost unlimited guns and ammunition including large shore batteries of heavy artillery. Thus, the 94th seemed to be on a forgotten front from early September until Christmas, 1944 when the 66th Division suffered the loss of of almost a whole infantry regiment when their transport was torpedoed only a few miles from shore by a submarine. General Patton immediately ordered the 94th to the Bulge and the Saar Moselle Triangle, where Luxembourg, Germany and France meet and in the heart of the Siegfried Lines deepest defenses.
    As a part of the 20th Corps under General Walton Walker, in Pattons Third Army, the 94th was awarded Battle Stars for The Ardennes (Bulge), France, Rhineland and Central Europe. Suffering heavy casualties in December, January, February and March, the Division helped to reduce the Bulge, cleared the Saar- Moselle Triangle, breached the Siegfried Line and The Siegfried Switch, Crossing the Saar River under fire and bridging the river with footbridges and Bailey bridges enabling the 10th Armored Division Tanks to cross and with the tankers to take the ancient city of Trier situated at the junction or the Saar and Moselle Rivers; Spearheading the famous 3rd Army drive across the Rhineland for nearly 100 miles from March 10th to March 25th this Division captured thous-ands of prisoners, culminating the drive to the Rhine with the capture of the great city of Ludwigshafen, The 20th Corps then reverted to Reserve Corps of Third Army and the 94th became the reserve Division of Corp, whereupon they were urgently sent to become a part of the First Army at Krefeld, Germany to help wiith "The Rhur" Pocket in the heart of Germany's industrial area. Ultimately, when the bitter final resistance anticipated failed to arise, the 94th in April was assigned to occupation duty and the initial set-up of Military Government. In this period, I was designated as Regimental Munitions Officer on the Regimental Staff with special duties as Purchasing and Contracting Officer for the unit and given a staff of personnel with my office in Solingen Germany. The first order required a complete inventory of all businesses and manufacturing concerns that employed 10 or more employees, plus their products, inventory on hand and any possible help that could be rendered to aid the thousands of displaced persons wandering about the country-side from forced labor camps abandoned by former authorities. To make matters worse the civilians were without food, hope and any former leadership in what had been a thoroughly dominated society. Many of the the people spoke only Russian or dialects unfamiliar to our troops, leading to a very real language problem, often requiring great patience to solve any problem. Fortunately, trained G-5 personnel were soon at hand to relieve us, whereupon the 94th was again hastily shifted to a mission of acting as a buffer on the Czechoslovakian Front to try to keep the Russian Army from entering the allied zones as previously fixed by the politicians. This stalemate mission lasted until December 1945 one minute before the deadline my special force crossed the front-

(4)

ier back into Germany just seconds before hordes of Russian soldiers rushed to occupy our former zones.   On approximately December 20th, word came down at approximately five PM that men with 60 or more points were eligible for return to go Stateside on Rotation and that we could be transferred to the 80th Division then awaiting transportation to leave forthwith. In two hours, twenty of us who had been with the unit all the way, were on trucks enroute to the new assignment, which left two days later by rail for Camp Twenty-Grand at Brest, France and the day after Christmas we were aboard ship bound for New York, arriving about January 4, 1946 at Camp Joyce Kilmer. From there, a packet of 12 men under my command arrived at Camp Blanding and after processing finally received my promotion from First Lieutenant to Captain which I had long awaited in the eight months I had served in the Staff assignments as Munitions Officer, but denied because promotions were frozen for many months after VE Day. My Terminal leave ran until March 4th 1946 and my new grade gave me a base pay of $ 200.00 per month, plus 5% for 3years service and $75.00 per month as a single Captain for quarters allowance off post and I believe a rations allowance of $ 21.00 per month. Accepting a reserve commission, after serving in the reserves without pay for two drills per month, I received a promotion to Major in the US Army Reserves, however in 1959 just before I had achieved 18 years combined service, I was a few drill hours short of the minimum hours needed for a socalled year of satisfactory service for retirement, therefore without a warning, I received an Honorable Discharge for had they not done so, with 18 years service, my right to proceed to 20 years for retirement would have vested. At that time my thought of ever reaching the age of 62 was beyond belief! To my good fortune, I have memories usually of the happiest times of the Service plus A Silver Star, Bronze Star, Purple Heart, Combat Infantry Badge, Expert Infantry Badge, Expert Marksman Medals for Machine Gun, Browning Automatic Rifle, Rifle and Carbine, Service Medals for European Theater, with four Campaign Stars, American Theater, World War 11 Victory, Army of Occupation and 18 months overseas service.

Federal Practice, Admissions And Miscellaneous.

Admitted to practice in Southern District of Florida 1949, and upon its Division, also to the then new Middle District. Admitted to Northern District in 1978. Admitted to Fifth Circuit Bar 1949 and upon creation of the Eleventh Circuit, that Bar also. Admitted to Bar of The United States Supreme Court in 1955. For many years I served by appointment as needed as an examiner for applicants to the bar of the Southern and Middle Districts in Pinellas County. Under miscellaneous Agencies, I was holder of a "U. S. Treasury Green Card" from 1950 and later admitted to U.S. Tax Court in 1975. In 1985 I was appointed to the Board of Arbitrators for The Middle District by Hon. Terry Hodges under Local Rule 8. In 1976, I was one of 12 applicants found qualified for nomination to fill the then vacancies on the Middle District Bench for Judges Scott and Tjoflat, for which one of the nominees was Hon. Elizabeth Kovachevich, now serving as Chief Judge for The Middle District. The summary of Federal Cases handled as a lead counsel can be made available from the above application if material.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

**DEBORAH D. PETERSON**
Personal Representative
Of The Estate Of
James C. Knipple (Deceased), et al.
**Plaintiffs**

AUG 1 4 2003

CHAMBERS OF
JUDGE LAMBERTH

v.

Civil No.1:01CV02094
Judge Royce C. Lamberth

**THE ISLAMIC REPUBLIC OF IRAN, et al.**
Defendants

**FILED**

**JOSEPH AND MARIE BOULOS**
Personal Representative
Of The Estate Of
Jeffrey Joseph Boulos (Deceased), et al.
**Plaintiffs**

AUG 1 4 2003

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

v.

Civil No.1:01CV02684
Judge Royce C. Lamberth

**THE ISLAMIC REPUBLIC OF IRAN, et al.**
Defendants

## ACCEPTANCE OF APPOINTMENT AS SPECIAL MASTER

Howard P. Rives, Sometimes Known As Howard Pendleton Rives or Howard P. Rives, Jr., represents to the Court that he/she possesses the Howard Pendleton Rives, Jr.

qualifications set forth below for service as a special master for the purpose of making a

determination upon issues related to damages, that the curriculum vitae attached to this

acceptance is factually correct, that he/she will exercise the office of special master in

accordance with the Amended Administrative Plan Governing Appointed Special Masters

as set forth below, that he/she will act in accordance with the powers described in Federal

Civil Rule 53 and not otherwise, that he/she agrees to perform the services required of the

office of special master at a rate of compensation with expense allowance as detailed in

paragraph three of the Amended Administrative Plan Governing Appointed Special

Masters, that he/she understands that the office of special master to which he/she is being

appointed may be terminated at any time in the sole discretion of the Court, that he/she

understands that payment for services to him/her may only be made from funds received

for that purpose and that funding has not been obtained as of the date of this acceptance,

and that the duties of the office of special master will be carried out in a prompt manner

consistent with fairness and justice.

## AMENDED ADMINISTRATIVE PLAN
## GOVERNING APPOINTED SPECIAL MASTERS

### (1) Qualifications

Each person appointed as a special master of this Court under this plan shall be a

member of the bar of the highest court of a state of the United States or of the District of

Columbia and have not less than five years of experience as a practicing attorney or as a

judge of a court of any state, the District of Columbia or the United States. Such person

shall not be related to any party or counsel appearing in this action, nor have any financial

or other interest which would create a conflict of interest.

### (2) Appointment

Counsel for the Plaintiff shall be responsible for providing the names, curriculum

vitae information and a written, signed statement indicating that this plan has been read by

and will be followed by each person known to be interested in appointment as a special

master in this action, said information to be provided within 30 days of the date of entry of

the Order adopting this plan. Appointment shall be conditioned upon adherence to the plan set forth.

### (3) Compensation

Payment is contingent upon receipt of funding from public or private sources to the United States District Court for the District of Columbia. Each special master shall be paid $1,000.00 per day upon submission to the Court of a voucher in the form attached. Where less than a full work day is expended by any special master in performance of duties under this plan, the voucher shall indicate so if less than ½ of the day is expended, in which case the special master shall be paid $500.00. Where more than ½ of a work day is expended but less than a full day, the per day amount of $1,000.00 shall be paid. In addition each special master shall be paid out of pocket expenses, not to exceed $300.00 per day, exclusive of transportation, and the special master's full transportation expenses. Should any question as to expenses arise, the regulations promulgated by the Internal Revenue Service regarding business expenses shall govern and, subject to the above limitation, all expenses qualifying as business related shall be paid.

### (4) Issues

The special masters appointed under this plan shall consider all issues related to damages as to each claim made by Plaintiffs. They are to be guided as to admissibility of evidence by the Federal Rules of Evidence, however, it shall not be necessary for documents to be qualified as genuine pursuant to Federal Evidentiary Rule 901. Authentication as required by FRE 901 may be made by any counsel's representation as an officer of the Court that a proffered document is genuine and is an accurate copy of what that counsel proffers it to be. The special masters shall be guided in reviewing and

evaluating damage claims by this Court's opinions in <u>Flatow v. Islamic Republic of Iran</u>, 999 F. Supp. 2d 1 (D.D.C. 1998); <u>Eisenfeld v. Islamic Republic of Iran</u>, 172 F.Supp.2d 1(2000); and <u>Jenco v. Islamic Republic of Iran</u>, 154 F. Supp.2d 27 (2001).

### (5) Powers

Each special master shall have and exercise all of the powers set forth in Federal Civil Rule 53(c) including, but not limited to, the power to compel production of evidence and to administer oaths. Testimony may be recorded by electronic means and the electronic copy, clearly identified as to the parties, shall be turned over to counsel for the Plaintiffs who shall preserve it for use by the Court

### (6) Reports

Each master shall, as to each claim referred to him, submit a report to the Court containing findings of fact and conclusions of law regarding damages. The report shall contain an evaluation of each item of damages.

### (7) Costs

The amounts paid from the registry of this Court as compensation and costs to special masters on any claim pursuant to this Plan from any fund existing as a result of a grant from the Office Of Justice Programs of the United States Department of Justice or from any other public or private source shall be repaid to the registry of this Court from any amounts received in payment of any judgment entered on behalf of the party upon the claim. Upon application by that party, all such amounts of re-imbursement paid to the registry of this Court shall be taxed upon the Defendant or Defendants found liable.

5

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America

that I have read the foregoing and that I have agreed to act in accordance therewith.

Date: _August 12, 2003_

**Proposed Special Master**