## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DEBORAH D. PETERSON,**
**Personal Representative**
**of the Estate of**
**James C. Knipple (Deceased), et al**

**Plaintiffs**

v.                                            Civil Action# 1:01CV02094(RCL)

**THE ISLAMIC REPUBLIC OF IRAN, et al.**

**Defendants**

### REPORT OF SPECIAL MASTER
### PURSUANT TO ORDER OF REFERENCE
### CONCERNING COUNTS CDLXXVI – CDLXXIX

In accordance with the Order of Reference entered pursuant to the provisions of

Federal Rule 53, the Special Master has received evidence with regard to all issues of

compensatory damages from witnesses as set forth below.  This is an action for wrongful

death resulting from an act of state-sponsored terrorism on the part of the Defendants and

their agents occurring on and prior to the 23rd day of October 1983 at the Beirut, Lebanon

United States Marine barracks.

The following findings of fact are based upon the sworn testimony and documents

entered into evidence in accordance with the Federal Rules of Evidence and have been

established by clear and convincing documentary evidence and testimony.

## FINDINGS OF FACT

1.  Jeffrey D. Young was born on July 25 1961 in the United States of America and was at birth and so remained until his death, a citizen of the United States of America.

2.  On October 23 1983, the Decedent was a member of the 2nd Recon Force of the United States Marines and was stationed in Beirut, Lebanon.

3.  On October 23 1983, the building housing the 2nd Recon Force Marine Battalion in Beirut was attacked by a suicide bomber who was driving a truck which penetrated to the center of the building where the truck, which was carrying a large quantity of explosives, detonated collapsing the building resulting in the deaths of 241 American personnel including the Decedent.

4.  As a result of the explosion, Decedent, Jeffrey D. Young, suffered severe injuries which resulted in his death.

5.  The official service death certificate, (report of casualty) admitted as an official record, indicated that the death of the Decedent was due to a terrorist attack at Beirut, Lebanon on October 23 1983.

6.  There is no evidence from which the Special Master can make any finding that the Decedent suffered bodily pain or suffering as a result of his injuries and that his death appears to be instantaneous.

7.  As a result of the death of Jeffrey D. Young, his estate suffered a loss of accretions to the estate which could have been expected to occur during the course of his anticipated life.  The said losses are the subject of a report under oath from Dr. Jerome Paige and are supported by Dr. Paige's testimony given in this matter by videotape.  The

report and the supporting calculations have been reduced by Dr. Paige to present value in accordance with <u>District of Columbia v. Barriteau,</u> 399 A. 2d 563 (D.C. App. 1979). Based upon the foregoing, the amount of loss to the estate is in the amount of Six Hundred Eighteen Thousand, Eight Hundred and Ninety One ($618,891.00) Dollars as reduced to present value.

8.  As a result of the death of Jeffrey D. Young, his parents and his surviving brother have suffered and will continue to suffer severe mental anguish and the loss of society. The testimony has clearly established that the parents of the Decedent, Judith Carol Young and John F. Young and his brother, John W. Young have never recovered from the shock of their loss. They suffered and have continued to suffer from severe emotional trauma from his death through the present. The emotional trauma sustained is permanent and significant as to each of the above persons.

a. Judith Carol Young, the decedent's mother, testified as to the close bond her son had with his mother. She testified that her son graduated from Moorestown High School in 1980. She stated that her son was true outdoorsman who loved sports, family and friends. They lived across the street from a wooded area and her son loved to hunt and fish in the woods. He was active in gymnastics and in the seventh grade participated in a six week tour of Europe where his team performed. He was short and wiry and suited to gymnastics. He also played football where his father was his coach. His family had a basketball net in the street in front of their home and on Sundays his friends would come over to watch football and then play basketball during half-time and after the games. Her son was also on the swimming and diving team in High School. Her son had always talked about joining the Marines as he came from a family that prized military duty and

service to his country. His uncle was a Marine and this was the family member who got him involved in hunting. He attended Boot camp at Paris Island and his mother took the train down to Savannah to visit him there. Her parents accompanied her to visit him and attended his graduation from Boot Camp there. He then went to Camp Geiger and then to Little Creek, Virginia. Her son volunteered for duty in Beirut and came home on leave in late April 1983 to visit. On May 1 1983 they took him to the airport in Philadelphia and that was the last time that they saw him before his death. He wrote some letters to his mother after he shipped out to Lebanon and also wrote his girlfriend who lived across the street.

It was before going to Church that they learned of the bombing in Lebanon. Mrs. Young testified that around 3:00 AM on Sunday morning, she awoke with a start with a strange feeling of death. To this day she believes this was the time of the bombing. At that time the Decedent's grandmother was staying with them and was being treated for cancer. Mrs. Young went downstairs as she thought something had happened to her mother and slept near her. Her brother-in-law called early in the morning and said that there had been a bombing in a building in Beirut but Mrs. Young thought everything was okay as she did not believe her son was in a building. After Church that day her family gathered at her home to be with her and her husband and son. For the next three days their emotions were on a roller coaster. They thought they saw their son in a video and were convinced that he was alive. It was on Wednesday that three officers came to the home to tell them that their son was missing. She did not believe them and was convinced that her son was still alive.

On the following Saturday morning she received a visit from service personnel and was told that her son was indeed killed in the bombing. She learned that her son's body was on the second plane coming back to Dover Air Force base and met the plane. She took years to accept that her son was dead and every time the doorbell rang she thought he would walk in the door. She never viewed his body.

Her son was buried at Lakeville cemetery in New Jersey. His grandmother died from cancer one month later adding to her grief. In July 1984, a park where her son played football in Moorestown was renamed Jeffrey Young Memorial Park. The dedication was attended by senior officers of the Marine Corps.

Mrs. Young took the lead in forming the victims support group known as the "Beirut Connection." She has been involved with the group for the last 21 years. They meet and talk about their treatment by the military, their emotions and the relationship they had with their children who died in the bombing. She started the "group's" newsletter and in effect has used the 'group" to create a shrine for her son's memory. This made and still makes her feel like she did something about his death and that she feels that he was too young to die.

She attends dedications and ceremonies related to the bombings around the country. She also formed the "Beirut Veterans" group. She testified that it is her duty to never let this act be forgotten and has formed her Beirut "family." She feels that 9-11 would never have happened if the government heeded the warning signs that were present before September 11, 2001.

Her son had discussed with her how he wanted to make a career out of the Marines and wanted to go to "jump" school. She and her son were so proud that he had been promoted to Corporal in the field.

She ended her testimony by explaining that if not for this act of terrorism, she would still have a son who would have given her grandchildren.

b. John F. Young is Jeffrey D. Young's father. He and his son enjoyed every moment that they spent together when he was not working as a roofing contractor to provide for his family. He testified that they went fishing together either at the beach or nearby lakes. His son loved the outdoors and spending time with his friends. John was his son's football coach from the seventh grade in a league where his son was a wide receiver who didn't look the part. His son also played lacrosse in High school. In his sophomore year in High School Jeffrey told him that he wanted to join the Marines. His father was proud that he enlisted as he came from a military family.

After his son enlisted he was sent to Boot Camp at Paris Island, then he went to Camp Geiger in North Carolina for rifle training which he was very good at. He then went to Little Creek, Virginia and then to Dive School in Key west, Florida. His son volunteered for the 2nd Recon Battalion and was accepted. In the spring of 1983 before he shipped out he came home on leave for a week to ten days. He spent time with his friends but made sure that he was home for the family dinner at 5pm. He talked about his future in the recon battalion as a marksman in the Marines which made John proud as he had also served overseas in the military. John's last advice to Jeffrey was that he stay away from telephone booths, buildings and parked cars, anywhere that explosives can be hidden; that he keep his gun loaded and that he keep his head down. Jeffrey was sent to

Beirut from North Carolina and sent several letters home but was not a prolific letter writer as he thought it was a six month deployment.

His father testified that he thought his son would be home for the Thanksgiving holiday. He was worrying as he saw that the situation in Beirut was deteriorating and he felt that we were not protecting the troops.

He learned of the bombing that Sunday morning from a call from his brother but he thought that Jeffrey had survived. He called Camp Lejune and found that five members of the Recon Company had survived the bombing but they did not have the names of the survivors. He went through the agony of thinking that he saw his son in a news video until Wednesday of that week when he received a visit from the military who told him and his wife that their son was missing. On Saturday he finally learned that his son was indeed killed in the bombing.

This was a terrible time in his life as he had lost one quarter of his family. He and his wife went to Dover Air Force base and met the plane carrying his son's body. His son was buried on November 4 1983. He has tried not to be bitter and has been active with his wife in helping the survivors for the last 21 years in the "Beirut Connection". It took his wife over three years to get the information on the families of the 272 survivors. He has attended ceremonies around the country related to the bombings including dedications. He has felt comfortable around Marine families to fill the void created by the loss of his son for the last 21 years. He spoke to the survivors who helped him fill in the last six months of his son's life in Beirut, learning how he was always positive in what he was doing.

In 1998 he went to Beirut with his wife and testified how emotional this was. They had to land at night and were met by a group of Lebanese Christians who took them to the part of the airport where the building had stood for a memorial as it was too dangerous to do so during the day. After this deeply emotional moment they were taken to a hotel and the next day the same group took them to a cemetery in the mountains overlooking Beirut where a memorial is now erected to his son Jeffrey, his wife and himself for their efforts.

He has been emotionally torn apart by the loss of his son, companion and friend and has never fully recovered from this loss. He remains angry to this day about the lack of protection of the Marines and our policies in Lebanon.

c. John W. Young was Jeffrey D. Young's younger brother by three years. He testified about how he and his brother would run and play in the woods across from their house when they were growing up; how they would climb trees together, play ball and go hunting and fishing together. He testified how Jeffrey loved sports including football and lacrosse and how he was proud of his brother's ability given his wiry stature. He testified how his brother looked forward to joining the Marines and went straight from High School to the Marines. He tearfully testified how he last saw his brother during his leave before he shipped out to Lebanon. That his brother wrote several letters a month to his mom and that he was always positive. He also said how they would send Jeffrey newspaper clippings with their letters. On the day after he learned of the bombing he stayed home with his family. He works for Public Service Electric & Gas Co. When he saw the video which his parents believed pictured his brother, he knew it was not him and was sure he was dead. He testified as to the emotional turmoil of that week until he

learned the following Saturday that his older brother was indeed killed in the bombing. He was distraught that there could not be a viewing of the body.

He testified as to the blur of the funeral and the subsequent dedication of the Memorial Park in Moorestown. He said that the family holidays since his brother's death have been quiet and different. He has a profound sense of loss. He has two sons and he talks to them about the Uncle that they never knew and tells them what he was like. He feels there will never be a replacement in his life for his brother.

## CONCLUSIONS OF LAW

1. Wrongful Death.

    a. The Plaintiffs have provided comprehensive testimony from the expert Dr. Jerome Paige clearly detailing the loss of accretions to the estate of each person. These calculations are detailed and supported by the evidence set forth in the report whose summary page is annexed to this report and have been establish pursuant to sound guidelines without question. The Special Master concludes as a matter of law that judgment should be entered for this element of damages for the Estate of Jeffrey D. Young in the amount of SIX HUNDRED EIGHTEEN THOUSAND, EIGHT HUNDRED NINETY ONE ($618,891.00) DOLLARS.

2. Survival Action-Pain and Suffering.

    a. There is no evidence from which the Special Master can conclude that the Decedent endured bodily pain and suffering after the attack and prior to his death.

3. Solatium.

    a.  The Foreign Sovereign Immunities Act provides for an award for solatium consisting of emotional injury inflicted upon persons other then the decedent by the actions of the Defendants and/or their agents.  The Court in the Flatow case, stated that this is an item of damages which belongs to the individual heirs personally for the injuries to the feelings and the loss of decedent's comfort and society.  The unexpected quality of a death and its emotional impact may be taken into consideration in gauging the emotional impact to those left behind.  In the present case, the impact upon the surviving parents and brother was profound and permanent.  The Special Master concludes as a matter of law that the following amounts are appropriate monetary compensation for this element of the damages:  to Judith Carol Young (mother), the sum of SEVEN MILLION FIVE HUNDRED THOUSAND ($7,500,000.00) DOLLARS; to John F. Young (father), the sum of SEVEN MILLION FIVE HUNDRED THOUSAND ($7,500,000.00) DOLLARS; to John W. Young (brother), the sum of THREE MILLION SEVEN HUNDRED FIFTY THOUSAND ($3,750,000.00) DOLLARS.

Dated: October 11, 2005

Jeffrey A. Manheimer, Special Master
New York, New York