# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**DEBORAH D. PETERSON,**
**Personal Representative**
**Of The Estate Of**
**James C. Knipple (Deceased), et al.**
        **Plaintiffs**


       v.                  Civil Action#1:01CV02094(RCL)


**THE ISLAMIC REPUBLIC OF IRAN, et al.**
        **Defendants**


## REPORT OF SPECIAL MASTER
## PURSUANT TO ORDER OF REFERENCE
## CONCERNING COUNTS DLXXXIV THROUGH DLXXXVIII

## THOMAS D. YOUNG
## THIRD CLASS PETTY OFFICER USN

      In accordance with the Order of Reference entered pursuant to the provisions of Federal Rule 53, the Special Master has received evidence with regard to all issues of compensatory damages from witnesses as below set forth. This is an action for personal injury resulting from an act of state-sponsored terrorism. The following findings of fact are based upon the sworn testimony and documents entered into evidence in accordance with the Federal Rules of Evidence and have been established by clear and convincing evidence.

## **FINDINGS OF FACT**

(1)     Thomas D. Young (Survivor) was born April 14, 1962.  Thomas is one of the three children of Robert Young (Deceased) and Nora Young (Deceased).  Thomas has a brother James Young and a sister Mary Stilpin.  All three children of Robert Young and Nora Young were adopted.  Thomas, James and Mary all testified that they were born citizens of the United States and that their father and mother were citizens of the United States.

(2)     Thomas D. Young is not married, at this time.  Thomas has been married three times and each of those marriages has been terminated by a divorce.  Thomas has one son, Ian Thomas Young, born May 1, 1993.

(3)     Thomas D. Young graduated from Cody High School in Detroit, Michigan, in 1980 at the age of 18 and then Thomas joined the United States Navy.  He began his Naval service on July 2, 1980 and received an Honorable Discharge from the United States Navy on July 1, 1984.  While he was in high school Thomas decided he wanted to pursue a career in the healing arts.  With that goal in mind, Thomas chose the United States Navy and, after testing, the Navy approved a contract for Thomas D. Young which guaranteed him training in the health care field.

(4)     Thomas D. Young graduated from Navy bootcamp at Great Lakes in July 1980 and he was then transferred to the San Diego Hospital for Navy medic training.  After graduation he was assigned to Portsmouth Naval Base in Virginia and then transferred to Camp LeJeune where he was trained as a Field Medic and assigned as a medic to the United States Marine Corps.

(5)     Thomas D. Young's father, Robert Young, worked for the Ford Motor Company in Michigan as a welder.  In September 1983 he developed medical problems from job-related exposure to chemicals.  Tom's father never returned to work and was on disability until his death in 2000 from lung cancer.  The Estate of Robert Young is a plaintiff herein.

(6) Thomas Young's mother, Nora Young, died in 2002. Thomas's mother taught Sunday School (CCD) at their local Catholic Church for 22 years. The Estate of Nora Young is a plaintiff herein.

(7) Thomas, James, and Mary all testified that they were a very loving and close-knit family. Their father and mother discussed their adoption at a very early age and all three children understood that decision and the full measure of love it represented.

(8) Thomas testified that his family had modest means and his father and mother purchased an unimproved lot in a rural area which they gradually improved as finances permitted. They built a cabin on the lot and the Young family visited the lot almost every weekend and enjoyed camping, boating, hiking, fishing, and snowmobiling. Thomas's father would take his two sons out fishing on a regular basis. The boys recalled that their father would drive the boat and "hang-out" with his sons as they fished.

(9) Thomas's mother and father were both devout Catholics and the three Young children attended church and Sunday School weekly. Both Thomas's mother and father were involved with their local parish and they hosted many church meetings in their home.

(10) Thomas D. Young volunteered for Float Duty to Beirut, Lebanon. Thomas was under no obligation to undertake this assignment but he wanted to travel and experience adventure. While the Unit was forming, terrorists blew up the U.S. Embassy in Beirut. Thomas D. Young arrived in Beirut in May 1983; he was deployed as a Naval Corpsman assigned as a Medic to the 24th MAU, First Battalion, 8th Regiment, United States Marine Corps.

(11) Thomas was assigned a bunker and housed in a bombed-out building about 100 yards from the Headquarters' Building. The building Thomas was housed in had no windows so the Marines filled the empty window spaces with sandbags. Thomas D. Young's medical unit built

a small hospital with tents near their barracks but a rocket hit the hospital destroying it. Thomas's Unit then built another small hospital in one of the buildings. From May 1983 to October 23, 1983 the 24th MAU went on "Condition Red" many times. Rocket fire and sniper fire were common events and four Marines were killed by enemy fire prior to October 23rd.

(12)     Thomas D. Young was scheduled to return to the United States in November 1983 but their replacement ship was diverted to Grenada. On October 23, 1983 the medical unit of the 24th MAU had packed and delivered their medical supplies to ships stationed offshore because the unit was scheduled to depart Beirut shortly.

(13)     Every Sunday the Marines were allowed to sleep in, unless they were on duty. At approximately 6:22 A.M. a huge explosion rocked the building in which Thomas D. Young was sleeping. Thomas woke and dressed quickly as the building began to be filled with smoke and cement dust. Thomas ran to his assigned bunker and waited for instructions. Thomas remembers it was quiet after the explosion and after about 15 minutes a Navy Chief came out and instructed Thomas to set up an aid station in the hallway and in the Officers' Mess. Thomas D. Young immediately did what he could and began to set up cots. A few minutes later wounded Marines began to be carried into his aid station. Thomas didn't have any medical supplies and he was the only medical professional in the aid station. Thomas didn't know what happened but the wounded Marines had bad blast injuries and were in shock.

(14) Thomas D. Young worked with the wounded; he had few supplies and no help. Thomas D. Young testified that three Marines died in his arms within an hour. The remains of those dead Marines were carried outside and placed with a growing number of dead Marines just outside his aid station.

(15)   One Marine was carried in and his arm was just hanging on to his body; another Marine had blast injuries which made his skin look like fish scales.  Thomas D. Young used all his skill and what few supplies he had to help the wounded but he believed then and he believes now that his efforts were not enough.

(16)   Later that morning Thomas was told to go to the explosion site to look for survivors.  Thomas was directed to a small pile of rubble where a Marine, still living, was trapped in a small cave from his waist down.  Thomas D. Young crawled into the cave and began to give the Marine oxygen.  Rescue workers were nearby trying to reach the Marine but it was difficult because they had to cut away metal and lift concrete slabs with heavy equipment.  Periodically Thomas D. Young had to crawl out of this tiny cave to get air and check on the rescue workers.  A dentist came by and asked Thomas if he wanted to give the trapped Marine a morphine injection.  The rescue workers were getting closer to the trapped Marine and Thomas was told that he would have to cease oxygen treatment to the Marine because the cutting torches could cause the highly explosive oxygen to detonate.  Thomas gave the trapped Marine morphine and discontinued the oxygen.  The Marine began to shake and Thomas was unable to get a pulse.  The trapped Marine died before he could be rescued; this was the fourth Marine who died while under the care of Thomas D. Young in three hours.  Thomas D. Young began to cry and he was instructed to report to his Chief.  Thomas' next assignment was to go into the basement of the destroyed building and look for the medical records of the 24th MAU.  The rescue workers' jackhammers and equipment were causing the basement to cave in and Thomas D. Young was forced to leave the basement without finding any medical records.  The basement and surrounding area was filled with body parts and blood and the air smelled of burnt flesh.

(17) After 2 P.M. on October 23, 1983, no living person was found in the Headquarters' rubble.

(18) Next Thomas D. Young was assigned to recover large body parts which were scattered all over the area. This required Thomas to go to the temporary morgue where Thomas saw the chief Doctor for the 24th MAU, Dr. Hudson. He had been killed and his head was crushed. Most of Thomas Young's fellow members of the medical staff of the 24th MAU were either killed or wounded in the explosion. Thomas D. Young was one of the very the few survivors.

(19) The temporary morgue ran out of body bags and the remains of Marines continued to be brought in from the explosion. The Marines generally attached a dog tag to their shoelaces but identification was difficult because may of the dead were sleeping at the time of the bombing and were not wearing their boots. After the first day the explosion area and rubble began to smell and rot.

(20) Thomas D. Young was next assigned as the 24th MAU liaison with the Lebanese Red Cross where he was to locate any Marines who had been taken to the hospitals in Beirut after the explosion. Thomas was required to sleep alone in a tent next to the Lebanese Red Cross. For days rockets were exploding near him and snipers bullets were hitting near him. Ten days after the explosion Thomas D. Young was sent to a ship and he left Beirut.

(21) On the morning of October 23, 1983, Robert Young, Nora Young, James Young, and Mary Stilpin learned of the attack in Beirut. The Young family didn't receive official word from the Marine Corps for several days. About two days after the explosion, Robert Young received a phone call from a ham radio operator who told him that his son Thomas had asked a Marine Radio Operator to get word to his family that he survived.

(22) James Young testified that three weeks before the Beirut explosion he lost three of his fingers in a work-related accident. At about the same time their father developed a medical problem which involved contamination from exposure to poison at his job. Their father was never able to return to work.

(23) Beginning on October 23rd Mary watched television constantly for three days. It was very stressful for Mary and her mother; they cried, prayed and answered almost continuous phone calls. Mary testified that her mother was in almost total shock and family friends stayed with them around the clock.

(24) Three days after the attack the Young family still hadn't received any official word on the condition of Thomas. It was then that they received a call from the Ham Radio operators in Virginia and Detroit. These radio operators relayed a message that Thomas D. Young had given to a Marine Radio Operator who had broadcasted it over the Ham Radio frequencies. Thomas had requested that someone call his family and tell them he survived.

(25) Mary testified that her father was in the Navy in World War II.

(26) The Young family told the reporters that they wanted to handle this trauma in a quiet manner. Mary recalled that when her father answered the telephone from the Ham Radio operator it was the first time she saw him cry. The entire Young family was scared to death about the condition of Thomas D. Young.

(27) Thomas Young received the Good Conduct Medal (1st Award), the Navy Expeditionary Medal, the Sea Service Deployment Ribbon, and the Combat Action Ribbon. Thomas Young obtained the rank of Third Class Petty Officer upon his Honorable Discharge in 1984.

(28)    After his return to the United States Thomas Young was scheduled for de-briefing but he was immediately hospitalized with infectious mononucleosis.  After he was released from the hospital he was given convalescent leave and then terminal leave.  In 1984, immediately after his honorable discharge from the Navy, Thomas experienced physical, mental, and emotional problems.  He visited the Department of Veterans Affairs but they offered no assistance.  Thomas testified that in 1984 he advised the Department of Veterans Affairs of the following problems: difficulty falling asleep and waking up several times at night, feeling of helplessness and hopelessness, increased response to loud noise, guilt feelings, flashbacks to his experiences in Beirut, lack of energy, motivation and general pessimism, social withdrawal, and avoiding crowed places.  Thomas has shown that he has sought treatment and he has continuously been receiving medication, medical care, counseling, and treatment by the Department of Veterans Affairs from 1984 to the present.  Thomas Young has further offered into evidence his medical records including: Group Exhibit 8 for the year 1996, Group Exhibit 9 for the year 1997, Group Exhibit 10 for the year 1998, Group Exhibit 11 for the year 1999, Group Exhibit for the year 2000, Group Exhibit 13 for the year 2001, Group Exhibit 14 for the year 2002, Group Exhibit 15 for the year 2003, and Group Exhibit 16 for the year 2004.  These official records conclusively prove that the Department of Veterans affairs gradually developed an increased understanding of the condition of Thomas D. Young from 1984 to the present.  Thomas D. Young has proven that he suffered severe medical complications resulting from his service in Beirut, Lebanon and he has been awarded a 50% disability by the Department of Veterans Affairs for service connected-conditions (Exhibit 3).

(29)    Thomas D. Young has conclusively proven that he currently suffers from Post-Traumatic Stress Disorder, has a history of social anxiety disorder with phobia, depression, suffers from claustrophobia, and he has a history of alcohol abuse.

(30)   The plaintiff has conclusively proven that the actuarial tables for Thomas D. Young indicate that he should expect 35 more years of life.

(31)   After October 23, 1983, Thomas D. Young cannot tolerate being in a crowd. He is unable to sit in the middle seats of restaurants, and he is unable to go to a movie theatre.

(32)   Since his discharge from the Navy, Thomas Young has been married three times and each marriage has ended in divorce.

(33)   The testimony of James Young indicated that Thomas D. Young did not have any of the above medical, emotional or mental problems prior to October 23, 1983 and James Young and Mary Stilpin has proved that their brother suffered a fundamental personality change after the terrorist attack on October 23, 1983. James Young testified that before his deployment to Beirut, his brother Thomas was friendly, outgoing, and he had many friends. After Beirut, James testified, Thomas became closed-up, in his own world, was no longer interested in having friends, and was quiet. James testified that his brother cries often and sits in a chair and gets sad. James also testified that his brother Thomas locks all the doors from the inside when he is home. Thomas never discusses his experiences in Beirut and James accepts his brother's limitations. James testified that his brother was depressed when he came home from Beirut. James said that when Thomas came home from the Navy he went to his basement room, stayed in the basement, and wanted to be alone.

(34)   James Young testified that the Young boys had a tradition of going to the cabin every weekend. Their father used to drive the boat while his sons fished. After October 23, 1983, these trips were no longer possible for Thomas and their father was denied the full companionship of his son. After October 23, 1983 Thomas Young did not go to the cabin, he did not fish, and he did not snowmobile.

(35) James Young and Mary Stilhin testified that Thomas had a great relationship with both his mother and father.  When Thomas was in Beirut he wrote home often but as his tour in Beirut got longer the Young family received fewer letter, the letters had less information, and the tone of the letters indicated that Thomas was in a stressful location.

(36) Mary Stilpin testified that when she and her brothers were young they played together normally and there was never any indication of any mental disability with her brother Thomas.  Mary Stilpin is currently married and has two children.

(37) Mary testified that Thomas liked the Navy and his medical training would have qualified him as a registered nurse.  Thomas had to abandon his career goals of working in the medical field.  He is currently employed by Northwest Airlines.

(38) The Young family had their home in Dearborn, Michigan and that is the home of many Middle Eastern residents.  Prior to October 23, 1983, Thomas had many Middle Eastern friends; afterwards he had none.

(39) Thomas wrote Mary and his letters talked about the heat and smell of Beirut but he did not discuss combat details.  He did tell her that the Marines were not allowed to shoot back and many times they had not ammo and were just targets.  Thomas wrote his sister and told her that 6 Marines were killed before October 23, 1983. Mary Stilpin related that one of their neighbors actually delivered a package to Thomas Young during their trip to Beirut.

(40) Today, 22 years after October 23, 1983, Thomas Young suffers from depression, grief, Post-Traumatic Stress Disorder, social phobia, and multiple relationship problems.  Since the 1983 bombing in Beirut, Thomas Young has not been able to have a normal relationship with his parents, siblings, and son because of the affects of his severe medical complications resulting from his service in Beirut, Lebanon.

**CONCLUSIONS OF LAW**

    (1)    Loss of Wages

No testimony was present to the Special Master indication past loss of wages.

    (2)    Future Loss of Wages

No testimony was presented to the Special Master to support a finding of future loss of wages.

    (3)    Pain and Suffering

There is evidence that Thomas Young has endured extreme pain and suffering beginning on October 23, 1983 and continuing to the present. Thomas Young has endured severe Post-Traumatic Stress Disorder resulting from the terrorist attack on October 23, 1983, which has continued to the present and will remain with significant effects upon Mr. Young for the remainder of his life. The Special Master takes judicial notice of the United States Life Tables published by the National Center For Health Statistics in 2000 which sets forth the statistical life expectancy of a white male age 44. It is noted that the continuing pain and suffering that Thomas Young has and is experiencing is not a life shortening type. The Special Master concludes as a matter of law that the appropriate compensation of Thomas D. Young for his physical and mental injuries and suffering, including the Post-Traumatic Stress Disorder is $18,000,000.00 and that judgment should be entered in that amount for pain and suffering to date and for the remainder of his lifetime.

    (4)    Solatium

The Foreign Sovereign Immunities Act provides for an award for solatium consisting of emotional injury inflicted upon persons other than the person physically injured by the actions of the defendants and/or their agents. As the Court noted in the Flatow case, 999 F. Supp. 1 (1998), this is an item of damages which belongs to the individual personally for injury to the feelings and

loss of decedent's comfort and society.  The unexpected quality of the occurrence may be taken into consideration in gauging the emotional impact to those related to the person physically injured. Jenco v. Iran, 154 F. Supp.2d 27 (2001).  In this case the impact upon the parents and siblings was profound. The Special Master concludes as a matter of law that the following amounts are appropriate compensation for this element of damages: Estate of Robert Young, Deceased, (father) - $10,000,000.00; Estate of Nora Young, Deceased, (mother) - $10,000,000.00; Mary Stilpin (sister) - $10,000,000.00; and James Young (brother) - $10,000,000.00.

**Date:   August 11, 2006**

                                                       **S/S**
                                      _____
                                      **Loraine A. Ray,**
                                      **Special Master**