THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 01-2094 (RCL) |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| STEVEN GREENBAUM, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 02-2148 (RCL) |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., ) | |
| ) | |
| Defendants. ) | |

**UNOPPOSED EMERGENCY MOTION ON BEHALF OF THE OFFICE OF FOREIGN ASSETS CONTROL FOR ENTRY OF PROTECTIVE ORDER AUTHORIZING DISCLOSURE IN RESPONSE TO RULE 45 SUBPOENA**

**INTRODUCTION**

The Department of the Treasury's Office of Foreign Assets Control ("OFAC"), which is not a party to the above-referenced cases, hereby seeks the entry of an order authorizing it to provide certain information responsive to subpoenas issued to it under Federal Rule of Civil Procedure 45 on behalf of the plaintiffs in Deborah D. Peterson, et al. v. The Islamic Republic of Iran, et al., Civil Action No. 01-2094 (RCL) and Steven Greenbaum, et al. v. The Islamic Republic of Iran, et al., Civil Action No. 02-2148 (RCL). The Court's authorization is required

before OFAC can respond to plaintiffs' subpoenas because information in OFAC's possession that may be responsive is protected from disclosure by the Trade Secrets Act, 18 U.S.C. § 1905, which imposes criminal penalties for the disclosure of information falling within its terms without appropriate authorization of law.  Pursuant to Local Rule, undersigned counsel has conferred with counsel for the plaintiffs, David J. Cook, Esq., regarding this Motion.  Mr. Cook has advised that neither the plaintiffs in Peterson nor the plaintiffs in Greenbaum object to the terms of the proposed protective order attached hereto.

## BACKGROUND

Plaintiffs in these two cases hold judgments entered by this Court against, inter alia, the Islamic Republic of Iran ("Iran").  See Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25 (D.D.C. 2007), appeal dismissed, 2008 WL 650452 (D.C. Cir. 2008); Greenbaum v. Islamic Republic of Iran, 451 F. Supp. 2d 90 (D.D.C.  2006).  The subpoenas issued on behalf of these plaintiffs each request information from OFAC regarding, inter alia, "any and all lists, narratives, histories, catalogues, inventories . . . of all assets of Iran."  See Tab A (Peterson subpoena); Tab B (Greenbaum subpoena).  The Greenbaum subpoena was issued on February 27, 2008, and the Peterson subpoena was issued March 10, 2008.[1]

Pursuant to Federal Rule of Civil Procedure 45, OFAC formally objected to plaintiffs' subpoenas by letters dated March 20, 2008 and March 26, 2008, on grounds that, inter alia, the release of responsive documents or a list containing the information requested might violate the Trade Secrets Act, 18 U.S.C. § 1905, a statute that provides for the imposition of criminal penalties on government employees for prohibited disclosure of information within its scope. See Tab C (Peterson objection letter); Tab D (Greenbaum objection letter).  Subsequently, the

---

[1]  A previous subpoena issued by the Peterson plaintiffs on January 24, 2008, is no longer operative.

parties have entered negotiations in an effort to narrow the scope of the subpoenas. Those negotiations are continuing.

Recently, however, OFAC has become aware of information relating to certain assets held in the United States that may be in immediate danger of dissipation. Information in OFAC's possession concerning these assets may be responsive to plaintiffs' subpoenas, and OFAC is currently attempting to verify whether, in fact, the information is responsive.[2] Nonetheless, because of the risk of immediate asset flight and in light of the prohibitions of the TSA, OFAC requests that the Court authorize it to disclose information responsive to plaintiffs' subpoenas via the attached jointly proposed protective order so that, should OFAC confirm that the information it has is responsive to plaintiffs' subpoenas, OFAC immediately can disclose certain information relating to these specific assets. OFAC intends that this Order, if entered, will provide the requisite authorization of law necessary to resolve its objections on the basis of the TSA – but only those objections – with respect to all information in its possession that may be determined to be responsive to plaintiffs' subpoenas, whether that information is to be produced immediately for the reasons described in this motion or whether it is subsequently produced following the conclusion of negotiations. By seeking this relief now, OFAC does not waive any other right, privilege, or immunity it may have with respect to any further response and continues to maintain its other objections to those subpoenas.[3]

---

[2] By identifying information concerning these assets as potentially responsive to plaintiffs' subpoena, OFAC states no position as to whether these assets may ultimately be available for attachment under any other governing law. Nor does OFAC intend to compromise or waive in any way the United States's ability in future litigation to state its views as to the amenability of these assets for attachment.

[3] As noted in the proposed order, the Court's entry of that Order would resolve only the question of whether disclosure is authorized under the Trade Secrets Act and does not constitute any determination as to any other privilege or immunity which OFAC may possess that applies either to the information to be provided at this stage, or to any additional information in OFAC's custody that

**ARGUMENT**

I. **AUTHORIZATION OF LAW IS REQUIRED BEFORE DISCLOSURE MAY BE MADE OF INFORMATION PROTECTED BY THE TRADE SECRETS ACT.**

Information responsive to plaintiffs' subpoena may be subject to the prohibitions on disclosure set forth in the Trade Secrets Act ("TSA"), a criminal statute. The TSA prohibits the unauthorized release by a federal employee or officer of certain types of information received by the government. Specifically, the statute provides:

> **§ 1905. Disclosure of confidential information generally.**
>
> Whoever, being an officer or employee of the United States or of any department or agency thereof . . . publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association; or permits any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; shall be fined under this title, or imprisoned not more than one year, or both; and shall be removed from office or employment.

18 U.S.C. § 1905.

The Court of Appeals has described the TSA's scope as "exceedingly broad" (even "oceanic") and has held that it "encompasses virtually every category of business information likely to be found in the files" of an agency. CNA Financial Corp. v. Donovan, 830 F.2d 1132, 1140 (D.C. Cir. 1987) (stating further that the TSA "appears to cover practically any commercial

---

may be responsive plaintiffs' subpoenas, or as to any objection that OFAC may have to plaintiffs' subpoenas. Similarly, in the event the Court authorizes OFAC to disclose information pursuant to a protective order in the form attached hereto, and OFAC determines that information, in fact, to be responsive, OFAC's subsequent provision of the information described in this motion to plaintiffs, see infra at 5, does not constitute a waiver of any applicable privileges that may apply to the information or its sources, including but not limited to the law enforcement privilege, in this or any other proceeding.

or financial data collected by any federal employee from any source in performance of the duties of his or her employment," and that the "comprehensive catalogue of items in the [TSA] accomplishes essentially the same thing as if it had simply referred to 'all officially collected commercial information' or 'all business and financial data received'"). As noted above, under the TSA, disclosure of any such information must be "authorized by law," or the disclosing employee "shall be fined under this title, or imprisoned not more than one year, or both; and shall be removed from office or employment."

The information that OFAC intends to immediately disclose to plaintiffs if it is confirmed to be responsive was voluntarily provided to OFAC by a financial institution in the course of an ongoing investigation. The information would identify the third-party financial institution at which the assets are being held, identify the specific assets at issue (to the extent possible), and include the value of the assets as of certain dates. Such information clearly falls within the type of information that has been held by the courts to be protected by the TSA, as it is "<u>any commercial or financial data collected by any federal employee from any source in the performance of the duties of his or her employment</u>." <u>CNA Financial Corp.</u>, 830 F.2d at 1140 (emphasis added).

Under the TSA, disclosure of protected information is permitted only if "authorized by law." A Rule 45 subpoena, which may be issued at the discretion of any civil litigant, does not constitute the "authoriz[ation] by law" that the TSA requires. <u>Cf</u>. <u>Doe v. DiGenova</u>, 779 F. 2d 74, 84-85 (D.C. Cir. 1985) (construing similar language in the Privacy Act); <u>In re Valencia Condensed Milk</u>, 240 F. 310, 314 (7th Cir. 1917) (construing predecessor to Trade Secrets Act). A "lawfully issued judicial order," however, provides the necessary authorization for disclosure of Trade Secrets Act material, <u>United States v. Liebert</u>, 519 F. 2d 542, 546 (3d Cir. 1975), and, indeed, in other cases seeking similar information from OFAC, this Court and others have

-5-

previously authorized disclosure pursuant to a protective order. See Estate of Ungar v. Palestinian Authority, Misc. No. 04-90 (D.D.C. ) (Sullivan, J.) (Docket No. 10); Jacobsen v. Oliver, Civil Action No. 01-1810 (D.D.C.) (Friedman, J/Robinson, M.J.) (Docket Nos. 68, 86, & 78); see also Rux v. Republic of Sudan, Civil Action No. 04-428 (E.D. Va.) (Docket No. 109).

Where the Trade Secrets Act is at issue, disclosure pursuant to a protective order that limits the distribution and use of the information that may be provided by OFAC is necessary to protect important governmental interests, whether the information that is the subject of the Order is provided to the Government voluntarily or under compulsion. The D.C. Circuit has recognized that ordinarily, in the context of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for example, information provided voluntarily to the Government is exempt from disclosure because it is "a matter of common sense that the disclosure of information the Government has secured from voluntary sources on a confidential basis will both jeopardize its continuing ability to secure such data on a cooperative basis and injure the provider's interest in preventing its unauthorized release." Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc). In order to protect the Government's interests in the voluntary provision of information, the D.C. Circuit has adopted a "categorical rule" rule that "financial or commercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of [FOIA, and therefore exempt from disclosure] if it is of a kind that would customarily not be released to the public by the person from whom it was obtained." Id. Accordingly, the information about the assets that OFAC intends to immediately disclose to plaintiffs if it is determined to be responsive – which was provided to OFAC voluntarily in the course of an ongoing investigation – would be categorically exempt from

disclosure under FOIA.[4]

Similarly, where the information that is to be disclosed was provided to the Government under compulsion – which may be true of other information that may be determined to be responsive to plaintiffs' subpoena in the course of the continuing negotiations – courts again evaluate whether the disclosure of the information would "impair the government's ability to obtain the necessary information in the future." McDonnell Douglas Corp. v. NASA, 180 F.3d 303, 304 (D.C. Cir. 1999); Critical Mass, 180 F.3d 878-80. Disclosure of information that is submitted to OFAC under compulsion but with the assurance that it will be treated confidentially, see, e.g., 31 C.F.R. § 501.603, would impinge upon OFAC's administration of its programs relating to terrorist financing and economic sanctions, which depend in large part on OFAC's ability to maintain the confidentiality of information submitted to it.

Accordingly – whether the information at issue is provided voluntarily (as it was with respect to the information that may be immediately disclosed), or under compulsion (as it may be with respect to additional information that may be determined responsive to plaintiffs' subpoenas) – there are important government interests to be served by limiting disclosure, and the TSA, of course, prohibits such disclosures categorically. As noted above, notwithstanding the standards that might govern a FOIA disclosure, the Court can provide the requisite authorization of law for disclosure of TSA-protected material by issuing an appropriate order.

---

[4] Where a FOIA request for information is at issue, FOIA itself provides the authorization of law necessary to allow release of TSA-protected information where the information falls outside the scope of FOIA's Exemption Four, which protects certain trade secrets and commercial and financial information. 5 U.S.C. § 552(b)(4). See McDonnell Douglas Corp. v. NASA, 180 F.3d 303, 305 (D.C. Cir. 1999); CNA Financial Corp., 830 F.2d at 1140-42. By the same token, information that falls within the scope of FOIA's Exemption 4 cannot be disclosed because of the restrictions of the TSA. McDonnell Douglas Corp. v. Widnall, 57 F.2d 1162, 1164 (D.C. Cir. 1995). Thus, the governmental interests that are protected by FOIA when it comes to TSA-protected information serve as useful tools in evaluating the proper treatment of such information, even in a non-FOIA case.

An order of disclosure incorporating the restrictions contained in the proposed order attached hereto, however, would protect the important governmental interests described herein and minimize the concerns articulated by the D.C. Circuit about the disclosure of such information that is provided to the Government.  OFAC, accordingly, requests that this Court authorize it to disclose information in response to plaintiffs' subpoena, via the attached proposed protective order.

## CONCLUSION

For the reasons set forth herein, OFAC requests that this Court enter the attached proposed protective order authorizing OFAC to disclose information in response to plaintiffs' subpoenas pursuant to the terms set forth therein.

> Respectfully submitted,
>
> GREGORY G. KATSAS
> Acting Assistant Attorney General, Civil Division
>
> JEFFREY A. TAYLOR
> United States Attorney
>
> VINCENT M. GARVEY
> Deputy Branch Director, Federal Programs Branch
>
> ARTHUR G. GOLDBERG
> Assistant Branch Director
> Federal Programs Branch
>
> ___/s/ *Rupa Bhattacharyya*_____
> RUPA BHATTACHARYYA (VA# 38877)
> Senior Trial Counsel
> Federal Programs Branch, Civil Division
> United States Department of Justice
> P.O. Box 883, 20 Massachusetts Avenue, N.W.
> Washington, D.C. 20044
> Tel.:  (202) 514-3146; Fax:  (202) 616-8202
> Email:  rupa.bhattacharyya@usdoj.gov

Dated:  June 11, 2008