UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DEBORAH D. PETERSON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil No. 01-2094 (RCL) |
| ) | |
| ISLAMIC REPUBLIC OF IRAN, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiffs moved for sanctions against garnishee HSBC Bank USA, N.A. ("HBUS") in the amount of roughly $2.7 billion (plus interest) based on their failure to disclose three blocked electronic fund transfers ("EFTs") of less than $25,000 in total. Pls.' Sanctions Mot., ECF No. 485. Plaintiffs also moved to schedule discovery and oral argument. Pls.' Scheduling Mot., ECF No. 494. Because HBUS committed no sanctionable conduct, the Court will DENY both motions.

I.   BACKGROUND

This case is the lead action arising from the 1983 bombing of the United States Marine Barracks in Beirut, Lebanon, and it contains nearly 1,000 plaintiffs. *See In Re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31, 101 (D.D.C. 2009). This Court entered final judgment in 2007, awarding plaintiffs roughly $2.7 billion. *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007).

In their efforts to collect on this award, plaintiffs served a Writ of Attachment on HBUS on April 30, 2008, which included the following two interrogatories:

1. Were you at the time of the service of the writ of attachment, or have you been between the time of such service and the filing of your answers to this interrogatory indebted to the defendant(s), and if so, how, and in what amount?

2. Had you at the time of the service of the writ of attachment, or have you had between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of the defendant(s) in you [sic] possession or charge, and, if so, what?

Interrogatories in Attachment, ECF No. 493-1.  HBUS answered "No" to both questions and returned the document to plaintiffs on May 6, 2008. *Id.*

In 2012, plaintiffs issued a new subpoena to HBUS, seeking, *inter alia*:

All documents and/or electronically stored information for the calendar years of 2008 through 2009 and pertaining to any and all financial transactions, communications concerning, payments to or from, accounts either controlled (directly or indirectly), or payable to the Islamic Republic of Iran or its known financial instrumentalities (i.e. Bank Melli, Bank Kshavari, Bank Markazi, Bank Sepah, Bank Tejarat, the Export Development Bank of Iran) or any other Iranian Financial Institution subject to U.S. Sanctions against the Islamic Republic of Iran.

Subpoena 4, ECF No. 485-39.   In response, HBUS acknowledged several EFTs blocked pursuant to Office of Foreign Assets Control ("OFAC") regulations, including three before May 6, 2008 (the date HBUS responded to plaintiffs' initial interrogatories):

| Recipient | Current Value[1] | Date Blocked |
|---|---|---|
| Bank Melli PLC, London | $21,060.22 | Feb. 21, 2008 |
| Bank Melli Iran/ Iranian Airport Co. | $2,713.05 | Mar. 12, 2008 |
| Bank Mellat, Tehran, Iran | $508.38 | Mar. 24, 2008 |

HBUS's Resp. & Objections to Subpoena 3, ECF No. 485-40.  An EFT "is nothing other than an instruction to transfer funds from one account to another." *Estate of Heiser v. Islamic Republic*

---

[1] As of December 19, 2012.  ECF No. 485-40.

*of Iran*, 885 F. Supp. 2d 429, 438 (D.D.C. 2012) (quoting *Shipping Corp. of India Ltd. V. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 60 n.1 (2d Cir. 2009)).  HBUS explains:

> Many international EFTs are denominated in U.S. dollars and are therefore routed through one or more 'intermediary banks' in the United States.  The participants in such EFTs are (1) the originator, the person seeking to transfer funds to another person; (2) the originator's bank; (3) one or more intermediary banks; (4) the beneficiary's bank, where the beneficiary's account can be credited; and (5) the beneficiary, the party meant to receive the funds.

HBUS's Sanctions Opp'n 9.  HBUS was an intermediary bank in the three transactions at issue.  But these EFTs were blocked pursuant to OFAC regulations.  *Id.* at 10; *see also* 31 C.F.R. pts. 544, 594.  The originator bank's account at HBUS was debited, but, instead of passing along to the Iranian-affiliated beneficiary banks, the proceeds were placed in a blocked account at HBUS under OFAC's supervision.

## II.   LEGAL STANDARD

D.C. Code § 16-526(b) provides that "[w]hen the garnishee has failed to answer the interrogatories served on him, . . . judgment shall be entered against him for the whole amount of the plaintiff's claim, and costs, and execution may be had thereon."

## III.   ANALYSIS

Before reaching the main question, the Court notes the ambiguity in the D.C. Code section which gives plaintiffs the right to a judgment against a garnishee who "fail[s] to answer the interrogatories served on him." D.C. Code § 16-526(b).  This provision's applicability to a garnishee who knowingly answers an interrogatory with false information is, on first glance, ambiguous.  A literal reading of the provision might suggest that such a person has not "failed to answer," although they did so dishonestly.  *See* HBUS's Sanctions Opp'n 10.  Under this reading, however, the provision incentivizes garnishees to lie.  This appears to be a rather

3

unlikely result. However, the Court need not firmly resolve the question here.[2] As explained below, even if a "fail[ure] to answer" encompasses a garnishee's dishonest, incomplete, or misleading answer to an interrogatory, plaintiffs' motion would still fail.

HBUS's May 2008 statement that it was neither "indebted to" the defendants nor in possession of any "any goods, chattels, or credits of the defendants" will not support a motion for sanctions pursuant to D.C. Code § 16-526(b) because these were legally accurate statements.

Interpreting the legal significance of the terms of the interrogatory requires looking to plaintiffs' statutory authority for pursuing these assets in the first place. Section 201(a) of the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (2002), allows a person holding a judgment against a state sponsor of terrorism to attach and execute on "the blocked assets of that terrorist party." This provision allows plaintiffs to "execute on only the assets 'of'—or, in other words, 'belonging to'—the terrorist state committing the act." *Heiser*, 885 F. Supp. 2d at 438. This provision "preempt[s] District of Columbia law." *Id.* at 444. However, the statute does not provide standards to determine which assets "belong to" defendants. To answer that question, the Court "looks to Restatements, legal treatises, and state decisional law to find and apply what are generally considered to be the well-established standards of state common law, a method of evaluation which mirrors—but is distinct from—the federal common law approach." *Id.* (quoting *Estate of Doe v. Islamic Republic of Iran*, 808 F. Supp. 2d 1, 23 n.7 (D.D.C. 2011)) (internal quotations omitted). Relying on Article 4A of the UCC, this Court has concluded that a blocked EFT does not "belong to" the terrorist party who

---

[2] The Court notes, however, that the interpretive question may not be resolved by reading D.C. Code § 16-526(b) "in tandem" with Federal Rule of Civil Procedure 37(a)(4), which provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond," *see* Pls.' Sanctions Reply 19, because the latter provision applies "only to parties to the case" and HBUS is not a party. *Alexander v. FBI,* 186 F.R.D. 170, 180 (D.D.C. 1999).

was the intended beneficiary of the transaction, and thus may not be executed on by judgment creditors under TRIA § 201. *Heiser*, 885 F. Supp. 2d at 448;[3] *see also Calderon-Cardona v. JPMorgan Chase Bank, N.A.,* 867 F. Supp. 2d 389, 400-05 (S.D.N.Y. 2011) (Cote, J.).[4]

Under *Heiser*, defendants had no property interest in these blocked EFTs. Accordingly, HBUS's 2008 statements that it was not "indebted to" defendants and did not possess any of their "goods, chattels, or credits" were legally accurate, notwithstanding their failure to mention these blocked EFTs. These accurate statements cannot support plaintiffs' motion for sanctions. Because this motion for sanctions fails, the Court also rejects plaintiffs' motion to schedule discovery and oral argument.

## IV. CONCLUSION

For the foregoing reasons, both of plaintiffs' motions are DENIED. An order shall issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on April 11, 2013.

---

[3] Plaintiffs in that case have taken an appeal on this issue. *See Estate of Heiser v. Islamic Republic of Iran*, 12-cv-7101 (D.C. Cir. Appeal Docketed Oct. 5, 2012). The appeal appears to have been fully briefed as of March 18, 2013, but oral argument has not yet been scheduled.

[4] Judge Cote has adopted the same approach as this Court, but several judges in the Southern District of New York have not. *See Estate of Heiser v. Bank of Tokyo*, 11-cv-1601, 2013 WL 342684 (S.D.N.Y. Jan. 29, 2013) (Castel, J.); *Hausler v. JP Morgan Chase Bank, N.A.*, 845 F. Supp. 2d 553, 563 (S.D.N.Y. 2012) (Marrero, J.); *Levin v. Bank of New York*, 09-cv-5900, 2011 WL 812032 (S.D.N.Y. Mar. 4, 2011) (Patterson, J.); *Hausler v. JP Morgan Chase Bank, N.A.,* 740 F. Supp. 2d 525, 534 (S.D.N.Y. 2010) (Marrero, J.).