## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), *et al.*, | |
| Plaintiffs, | Consolidated Case Nos. 01-cv-2094 (RCL) |
| - against - | 01-cv-2684 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | **Re: ECF No. 542** |
| Defendants. | |

## DECLARATION OF JAY GLENN IN OPPOSITION TO FAY & PERLES' "EMERGENCY" MOTION TO QUASH HIS AMENDED NOTICE OF CHARGING LIEN

I, Jay Glenn, hereby declare:

1.     I am an attorney admitted to practice law in the State of Illinois and in this action. I am also a Vietnam War veteran, having achieved the rank of Captain in the United States Army. I submit this declaration in opposition to the motion filed by Fay Law Group and Perles Law Firm, P.C. (together, "Fay & Perles") to quash my Amended Notice of Charging Lien (the "Notice of Lien").   Except as otherwise indicated, I have personal knowledge of the matters set forth herein and could testify competently thereto.

2.     Shortly after the commencement of this action in October 2001, and the failure by Defendants Islamic Republic of Iran and Iranian Ministry of Information and Security to timely respond to the complaint, Thomas Fay (my brother in law) invited me to assist him and his co-counsel, Steven Perles (operating with Fay as "Fay & Perles") in proving damages on behalf of Plaintiffs with whom they had signed Contingent Retainer Agreements, in contemplation of securing a default judgment, and I agreed to do so.  Fay & Perles also invited roughly a dozen other persons to serve as so-called "damages attorneys" in this action.  Fay represented to me, and

presumably the other damages attorneys, that we would be paid from amounts recovered on behalf of Plaintiffs we represented.

3.      On December 18, 2002, this Court entered Defendants' default and issued an accompanying memorandum opinion providing Plaintiffs would be eligible to recover damages to the extent they are able to demonstrate they sustained injuries.

4.      At a hearing held on or about March 17, 2003, at which I and the other contemplated damages attorneys were in attendance, this Court admitted me and such other attorneys *pro hac vice* so that we could present Plaintiffs' damages evidence to Special Masters.  At the hearing Fay & Perles represented to this Court that damages attorneys would be paid from amounts recovered on behalf of Plaintiffs they represented.[1]

5.      On May 30, 2003, this Court entered a default judgment as to all issues of liability, and ordered that all damages claims be submitted to Court-appointed Special Masters, whereupon this Court would enter judgment as to each compensatory damages claim following receipt and consideration of reports and recommendations from the Special Masters.

6.      Soon thereafter, I entered into an Agreement (the "Associate Counsel Agreement") prepared by Fay & Perles on their letterhead governing my retention as a damages attorney, a true and correct copy of which is attached hereto as Exhibit 1.  The agreement acknowledged Fay & Perles would be paid 33-1/3% of any recovery by Plaintiffs they represented as their contingent fee, and provided that I would be compensated as follows:

> (1) 3% of the gross amount collected from the Defendants with respect to compensatory damages as to each client referred [by Fay & Perles] to Associate Counsel [me]; and

---

[1] I have been advised that the relevant hearing transcript cannot be retrieved via PACER, or from this Court's Court Reporting and Recording Division because the hearing took place more than ten years go.

> (2) an amount equal to the necessary expenses incurred by Associate Counsel in the preparation, prosecution, and administration of the case.

The agreement also defined my responsibilities as follows: "preparation of all witnesses for hearing, presentation of all evidence to the Court or Special Master and presentation of all records and medical reports to the Court."

7.      Fay & Perles ultimately referred 63 Plaintiffs to me to represent in damages proceedings before a Special Master, which Plaintiffs are identified on Exhibit 1 to my Notice of Lien.

8.      Contrary to Fay & Perles' assertion in the memorandum in support of their motion, many of those Plaintiffs which I represented were located outside of Illinois.  For example, certain Belmer Plaintiffs were located in Virginia, Young Plaintiffs were located in Michigan and Maine, Phillips Plaintiffs were located in South Carolina and Indiana, Thorstad Plaintiffs were located in Indiana, Virginia, and Florida, Helms Plaintiffs were located in Nebraska, Moore Plaintiffs were located in Missouri, Olson Plaintiffs were located in Minnesota and North Dakota, Scott Plaintiffs were located in Arizona, Wheeler Plaintiffs were located in Minnesota, and Woollett Plaintiffs were located in Oklahoma and Texas.

9.      Beginning even before I entered into the Associate Counsel Agreement, I met with, and devoted substantial time and effort preparing Plaintiffs for the damages proceedings, and I later presented their individual damages cases and damages evidence to the Special Master.  The Plaintiffs were aware of the fact that I was to be compensated out of Fay & Perles' portion of any fees, as discussed below.  During this period, from roughly 2001 to 2007, my professional efforts were focused almost exclusively on maximizing provisional awards by the Special Master to Marine Barracks bombing victims and their families, and I declined alternative professional

3

opportunities in order to maximize their recoveries, when and if the judgments in this action could be monetized as they now have been.

10.     During the course of my representation, meetings, and discussions with these Plaintiffs, I became aware of the existence of additional potential Plaintiffs, all relatives of Marine Barracks bombing victims, with whom Fay & Perles (or any other attorneys) had not entered into Contingent Retainer Agreements.

11.     After advising Fay that I believed that there were additional potential plaintiffs who might retain us, Fay and I orally agreed that if I were to engage additional Plaintiffs on Fay & Perles' behalf, I would be paid one-third of the contingent fee received by counsel on such additional Plaintiffs' behalf ("Additional Fee Agreement"), on top of the 3% contingent fee (plus expenses) payable to me under the Associate Counsel Agreement for representing such additional plaintiffs in damages proceedings before the Special Master.

12.     Thereafter, I entered into Contingent Retainer Agreements, both on behalf of Fay & Perles and individually, with 40 additional Plaintiffs identified on Exhibit 2 to my Notice of Lien.  True and correct copies of 33 such Contingent Retainer Agreements are attached as Exhibits 2A-2G (agreements with Livingston, Belmer, Phillips, Young, Swinson, Moore, and Thorstad Plaintiffs not referred to me by Fay & Perles).[2]

13.     Prior to executing each such agreement, I explained to each such additional Plaintiff that one-third of the contingent fee that they were agreeing to pay counsel would go to me, and each such additional Plaintiff consented to my being paid that amount from any recovery collected on his or her behalf.

---

[2] I have not yet been able to locate the executed agreements with the remaining seven Plaintiffs, but believe Fay & Perles have copies that I had forwarded to them and that they intend to rely on such agreements to collect their own contingent fees from any distribution from the QSF Trust on behalf of those Plaintiffs.

14.     Following my entry into a Contingent Retainer Agreement with each additional Plaintiff, I transmitted an executed copy of the same to Fay, together with a cover letter confirming that the client was referred by me.  True and correct copies of examples of such letters are attached as <u>Exhibit 3</u>.

15.     In addition, following my entry into Contingent Retainer Agreements with the relatives of a Marine Barracks bombing victim, I completed a Family Information Sheet indicating client names and family relationship with the victim, and transmitted the same to Fay, together with a cover letter which provided:

> I located and executed Attorney Client Contracts for [names indicated on Family Information Sheet].  **In accordance with prior discussions, I am entitled to an additional contingent fee of 11.11% of any recovery/interest for these [__] claims.**

A true and correct copy of an example of such transmittal letter is attached as <u>Exhibit 4</u>.  Fay & Perles never objected to or questioned my entitlement to that fee.

16.     Further, following the Special Master's entry of a report and recommendation for each Marine Barracks bombing victim and his relatives that I represented, I transmitted a copy of the same to Fay, together with a cover letter indicating the calculation of my fee under both the Associate Counsel and Additional Fee Agreements, and Fay & Perles never objected.  True and correct copies of examples of such transmittal letters are attached as <u>Exhibit 5</u>.

17.     On September 7, 2007, this Court entered default judgments in favor of the Plaintiffs I represented in the amounts provisionally awarded in the Special Master's reports and recommendations.  Thus, as of that date my responsibilities as a damages attorney were completed. Even after such date, however, I continued to work on behalf of Plaintiffs herein, serving as local counsel for Plaintiffs in actions against Iran pending in the United States District Court for the Northern District of Illinois, where I am admitted (including the post-judgment collection action

captioned *Peterson v. Islamic Republic of Iran*, Case No. 08-cv-1592 (N.D. Ill.)), without any additional agreements concerning my compensation and for which I have not received any compensation to date.

18.     Nevertheless, Fay & Perles advised me in 2010 they would not pay me any amount under the Associate Counsel or Additional Fee Agreements.  In response, I commenced an action against Fay & Perles (and certain other attorneys identified in my Notice of Lien) in the United States District Court for the Southern District of New York (Case No. 10-cv-8287).  Although that action was dismissed in 2011 (without prejudice) on grounds of lack of jurisdiction and improper venue, while the same was pending Fay acknowledged in the Rule 26(f) report, and his counsel represented to the Court at argument, that Fay & Perles had in fact entered into the Associate Counsel Agreement with Glenn and had agreed to compensate him as provided therein.  True and correct copies of excerpts from the Rule 26(f) report and transcript are attached hereto as Exhibit 6 and Exhibit 7.

19.     Following the issuance of the mandate by the Second Circuit on May 24, 2016 in the turnover action captioned *Peterson, et al., v. Islamic Republic of Iran, et al.*, Case No. 10-cv-4518 (KBF) (S.D.N.Y.), I engaged counsel and filed the Notice of Lien in this action, as well as a letter in the turnover action advising of my having filed the Notice of Lien.  A true and correct copy of that letter is attached hereto as Exhibit 8.

20.     Fay & Perles, through Plaintiffs' counsel in the turnover action, responded by letter, dated June 1, 2016, stating that no amount is due under the Associate Counsel or Additional Fee Agreements because the latter "is not reflected anywhere in a writing" and I allegedly "breached [the former] by failing to perform [my] assigned duties."  A true and correct copy of that letter is attached as Exhibit 9.  I did not fail to perform my duties and Fay & Perles have never supported their assertion to the contrary.

21.     Thereafter, I filed a motion to intervene in the turnover action.  A true and correct copy of the memorandum of law filed in support of my motion is attached as <u>Exhibit 10</u>.  That motion was denied before an opposition was even submitted, whereupon Fay & Perles moved to quash my Notice of Lien in this action.

22.     Given that Fay & Perles admitted they did not raise any issues with my performance as a damages attorney until three years after judgments were entered in this action and my work in connection therewith had been completed, and that their challenges to the enforceability of the Additional Fee Agreement are meritless both as a legal matter (as discussed in the accompanying memorandum of points and authorities) and as a factual matter (because the Additional Fee Agreement is supported by multiple writings), I believe Fay & Perles' motion to quash my lien is nothing more than a transparent attempt to avoid having to pay amounts owed to me, and perhaps other damages attorneys that have substantially identical agreements with Fay & Perles, now that the Second Circuit issued its mandate and a significant distribution to Plaintiffs (and their attorneys) is anticipated, which was not the case in 2007 when final judgment was entered in Plaintiffs' favor in this action.

23.     In support of their motion, Fay & Perles state my Notice of Lien should be quashed because it was filed to delay distributions to Plaintiffs.  That assertion is patently false.  As a former serviceman, I am acutely aware of the anguish the Marine Barracks bombing caused the victims and their families and want nothing more than to have them to receive their distributions from the recovered assets paid as quickly as possible.  However, my being paid for services rendered will not diminish nor delay their receipt of amounts to which they are entitled, because my compensation is due solely from the contingent fees to be received by Fay & Perles, as indicated above.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Mount Pleasant, South Carolina, on June 21, 2016.

Jay Glenn