# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEBORAH D. PETERSON, <br> Personal Representative of the Estate of <br> James C. Knipple (Dec.), *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ISLAMIC REPUBLIC OF IRAN, *et al.*, <br><br> Defendants. | Case No.:  1:01-cv-02094 <br> (RCL) |

## RESPONSE OF SPECIAL MASTERS LORAINE RAY AND KAREN KRUGER TO PLAINTIFFS' MOTION FOR ORDER AUTHORIZING PAYMENT OF FUNDS FOR COMPENSATION OF SPECIAL MASTERS OF THIS COURT

Plaintiffs in this case are each victims of a heinous act of terror, perpetrated with the

support of the Defendants, and as to which the Defendants have been judged liable.  The Court

has entered a default judgment against Defendants in the aggregate amount of over $2.6 billion,

to be allocated among the *Peterson* Plaintiffs.  Judgment [Dkt. 228].[1]  In separate litigation in the

Southern District of New York, Plaintiffs have secured the turnover of approximately $1.9

billion in assets to partially satisfy the judgment in this case as well as the judgments in a series

of other cases relating to Iran-sponsored terrorism (the "Partial New York Recovery").  Order

Authorizing Distribution of Funds [SDNY Dkt. 651].  On May 29, 2016, Plaintiffs' counsel filed

the above-referenced motion [Dkt. 534; the "Motion"], seeking to pay special masters' fees and

costs incurred in this case (per Plaintiffs' Motion, a total sum of $781,897) out of the Partial New

York Recovery.

---

[1]  Unless otherwise noted, all docket citations are to the above-captioned case.  Documents filed in *Peterson, et al. v. Islamic Republic of Iran, et al.*, Case No. 10-cv-4518 (KBF) in the U.S. District Court for the Southern District of New York, are cited as "SDNY Dkt." entries.

Special Masters Loraine Ray and Karen Kruger, two of the masters who served in this case, submit this pleading in response to the Motion, raising several concerns as to the proposed compensation order:  First and foremost, in a matter where Plaintiffs have lost and suffered so much, and where insufficient assets have been recovered to date even to pay their limited cognizable damages, it is inappropriate to reduce their recovery further by siphoning off funds from the Partial New York Recovery so that the special masters may be compensated.  This is particularly so since the Court went out of its way years ago to guide Plaintiffs' counsel to seek special masters' compensation through alternate means – by an application for funds administered under Section 1404C of the Victims of Crime Act of 1984 – an approach that Plaintiffs' counsel have inexplicably failed to pursue.  In addition, some seven years have passed since Plaintiffs' counsel failed to follow the Court's guidance; and as a result of this failure, the special masters have been deprived for years of the use-value of the substantial sums they are owed.  Finally, Plaintiffs' counsel's unjustified non-responsiveness on this issue has necessitated the filing of this pleading, and the attendant expenditure of judicial resources and attorneys' fees. This too should be reflected in the special masters' compensation order.

Accordingly, in lieu of the compensation order proposed by Plaintiffs' counsel, Special Masters Ray and Kruger respectfully propose as follows:

(1)     That the Court impose a tax or sanction on Plaintiffs' counsel directly, requiring counsel directly to pay for reasonable special masters' fees and costs incurred herein, pending reimbursement from Defendants in the event that sufficient funds are recovered to fully compensate Plaintiffs and to cover such fees and costs.

(2)     That the Court include in such tax or sanction an obligation on Plaintiffs' counsel directly to pay interest to the special masters on the reasonable fees and

costs incurred, accruing from a reasonable date after Plaintiffs' counsel's failure to follow the guidance set forth in the Court's opinion dated September 30, 2009.[2]

(3)     That the Court further include in such tax or sanction an obligation on Plaintiffs' counsel directly to make payment to Special Masters Loraine Ray and Karen Kruger for reasonable attorneys' fees and costs incurred in connection with this pleading and any related proceedings in this case.

As detailed in Part III.D, *infra*, Special Masters Ray and Kruger submit that the tax or sanction described above should be imposed solely (though jointly and severally) on the Plaintiffs' counsel of record who were responsible for the decision to forego applying for Section 1404C funding. Accordingly, references herein to "Plaintiffs' counsel" who should be taxed, sanctioned, or otherwise ordered to pay the aforementioned amounts are intended to refer to such responsible counsel.

This approach to compensating the special masters would preserve the assets of the blameless Plaintiffs, while imposing expenses on their attorneys who failed to pursue funding available to compensate the special masters in the manner outlined previously by this Court.

## I.     BACKGROUND

### A.     The Appointment and Employment of Special Masters in This Case.

As the Court is aware, this case was brought in 2001 under the now-defunct Section 1605(a)(7) of the Foreign Sovereign Immunities Act (the "FSIA") to present claims against the Islamic Republic of Iran and its security agency arising from the 1983 bombing of the U.S. Marine Corps barracks in Beirut, Lebanon. Section 1605(a)(7) had been enacted in 1996 to

---

[2]  This opinion is filed in this case as Docket Entry 439.  It is further discussed below.  For reasons also discussed below, Special Masters Ray and Kruger propose November 12, 2010 as the date from which interest should accrue. *See infra* Part III.B.

except from the sovereign immunity doctrine state sponsors of terrorism.  Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a)(1)(C), 110 Stat. 1214, 1241 (1996).  Defendants were found in default [Dkt. 18]; and after the fact-finding proceedings required by the FSIA, the Court found on May 30, 2003 that Defendants were responsible for the Beirut bombing and thus rightly held liable to the victims of this attack under the FSIA. Memorandum Opinion [Dkt. 24].  The damages phase of this litigation followed, and in order to determine particular damages for each of the nearly 1,000 Plaintiffs herein, the Court enacted an administrative plan to appoint and employ special masters.  *See* Amended Administrative Plan Governing Appointed Special Masters and Order [the "Administrative Plan"; Dkt. 29].  "The special masters appointed under this plan [were to] consider all issues related to damages as to each claim made by Plaintiffs," and "as to each claim referred… submit a report to the Court containing findings of fact and conclusions of law regarding damages."  *Id.* ¶¶ 4-6.  As to special masters' compensation, the Administrative Plan provided that "[p]ayment is contingent upon receipt of funding from public or private sources to the United States District Court for the District of Columbia."  *Id.* ¶ 3.  The Administrative Plan detailed the manner in which the masters were to bill for their time.  *Id*.  The Administrative Plan also provides that special masters are to be reimbursed for reasonable expenses relating to their service.  *Id*.

Special Masters Loraine Ray and Karen Kruger were appointed on August 27, 2003 and August 6, 2003, respectively, two of the thirteen special masters ultimately employed in this matter.  Order [Dkt. 39]; Order [Dkt. 33].  Like the other masters, Ms. Ray and Ms. Kruger spent many hours hearing and reviewing testimony from Marines who survived the 1983 attacks, from the executors of the estates of Marines who were killed in Beirut, from the family members of deceased and surviving Marines, and from other witnesses.  Special Masters Ray and Kruger

took time off from their law practices to meet with these witnesses and to review evidence.  Like the other masters, Ms. Ray and Ms. Kruger wrote detailed reports to the Court of their findings, *see with respect to Ms. Ray* [Dkt. 63; Dkt. 92; Dkt. 103; Dkt. 145; Dkt. 148; Dkt. 150; Dkt. 170; Dkt. 172; Dkts. 198-200; Dkts. 205-207], *see with respect to Ms. Kruger* [Dkt. 56; Dkt. 79; Dkt. 87; Dkt. 93-94; Dkt. 100-101; Dkt. 104-105], which the Court integrated into the opinion supporting its September 7, 2007 judgment.  Memorandum Opinion [Dkt. 229].  As Plaintiffs note, Ms. Ray and Ms. Kruger each submitted a voucher for their services.  Motion at 2.  Ms. Ray's voucher, submitted on April 22, 2008, requested payment and expense reimbursements totaling $209,374.  *Id*.  Ms. Kruger's voucher, submitted on May 1, 2008, requested payment and reimbursements totaling $34,838.  *Id*.

**B.    Prior Motions Regarding Special Masters' Compensation, the Court's Guidance to Plaintiffs' Counsel, and Plaintiffs' Counsel's Failure to Take Action.**

This case presents an unusual procedural issue in that, in January 2008, Congress revised the "terrorism exception" to the sovereign immunity doctrine.  In particular, Section 1083 of the National Defense and Appropriations Act for Fiscal Year 2008 (the "NDAA") repealed Section 1605(a)(7) – the provision Plaintiffs sued under – and replaced it with a new terrorism exception, now encoded at 28 U.S.C. § 1605A.  Pub. L. No. 110-181, §§ 1083(a)(1), (b)(1)(A)(iii), 122 Stat. 341.  The change was to provide additional tools and resources for terrorism victims, and indeed the new law did so.  Most pertinently, Section 1605A(e) provides that:

> The Attorney General shall transfer, from funds available… under section 1404C [of the Victims of Crime Act of 1986], to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters….

28 U.S.C. § 1605A(e).  However, as detailed below, Congress's procedural decision to repeal one statute and replace it with another raised questions as to the extent to which new provisions applied to cases, such as this one, that were brought under the former statute.

Plaintiffs presented their first set of motions to compensate special masters in 2008.  *See*, *e.g.*, Motion for Order for Payment of Special Master Loraine A. Ray, Esq. [Dkt. 242]; Motion for Order for Payment of Special Master Kruger [Dkt. 253].  In these motions, Plaintiffs asked for the special masters to be paid out of Section 1404C funds, pursuant to Section 1605A(e).  *Id*.  On the Court's invitation, the U.S. Department of Justice submitted a memorandum [Dkt. 389] on the question of whether Section 1605A(e) applied retroactively to cases presented under Section 1605A's predecessor, Section 1605(a)(7).  Citing the plain language of the statute and the "presumption against retroactive application," the Department opined that Section 1605A did not apply, *see id.* at 4-5, and the Court on this basis denied Plaintiffs' motions.  Memorandum Opinion and Order [Dkt. 430].

Plaintiffs' second attempt to provide for compensation of the special masters was their April 2009 Motion for Order Authorizing Payment [Dkt. 435], which stated that "[c]ounsel… has arranged for a deposit to be made to the registry of the Court by the Peace Through Law Foundation, Inc." for the payment of certain of the special masters.  *Id.* at 3.  In particular, the motion indicated that $204,016 was raised, a subset of the $781,897 incurred as reflected in the masters' vouchers.  *Id*.  Plaintiffs proposed that from this amount, nine of the thirteen special masters employed in this case should be paid in full, and the remaining four not at all.  (Ms. Ray was in the no-payment set; Ms. Kruger was in the full-payment set.)  *Id*.

The Court addressed the special masters' compensation question, and many other issues, in a substantial memorandum opinion that issued in various terrorism cases against Iran on

September 30, 2009.  [Dkt. 439; the "September 30, 2009 Opinion"].  First, the Court addressed

the procedural posture of cases presented under the now-defunct Section 1605(a)(7).  As the

Court noted, the implementing legislation – that is, Section 1083 of the 2008 NDAA, which

repealed Section 1605(a)(7) and replaced it with Section 1605A – provided two mechanisms by

which Section 1605(a)(7) cases could essentially be converted into Section 1605A cases:  Under

Section 1083(c)(2), "prior actions" under certain circumstances might be converted into Section

1605A actions by motion.  In addition, under Section 1083(c)(3), "related actions", *i.e.*,

"action[s] arising out of the same act or incident," might be refiled under Section 1605A.  Sept.

30, 2009 Opinion at 53-55 (*citing* Pub. L. No. 110-181, §§ 1083(c)(2)-(3), 122 Stat. 341).  As is

pertinent here, either of these conversion events – the subsection (c)(2) motion or the subsection

(c)(3) refiling – had to occur within sixty days of the January 2008 enactment of the statute.

Sept. 30, 2009 Opinion at 56 (*citing* Pub. L. No. 110-181, §§ 1083(c)(2)(C), (c)(3), 122 Stat.

341).

    The Court further compared Section 1083 subsections (c)(2) and (c)(3) and concluded

that "§ 1083(c)(3) is the appropriate avenue for relief in those cases [such as this one] that

reached final judgment… prior to the enactment of the 2008 NDAA and which were not 'before

the court[] in any form' as required for treatment on motion pursuant to § 1083(c)(2)."  Sept. 30,

2009 Opinion at 103 (internal quotations in original).  The Court noted that Plaintiffs in this case

had neither filed a conversion motion under subsection (c)(2) nor filed an amended complaint

under subsection (c)(3).  It stated:

> At this juncture, counsel in *Peterson* may want to consider filing an
> amended complaint, consistent with the procedures for related actions
> in § 1083(c)….

*Id*. at 120.[3]

By this point, the 60-day post-NDAA-enactment period for conversion or refiling under Section 1083 had passed.  However, the Court noted that plaintiffs' counsel, including in this case, "appear to have been laboring under an erroneous view of the law," namely that the conversion of a Section 1605(a)(7) cause of action was somehow automatic, or that conversion was unnecessary due to retroactive application of Section 1605A provisions.  *Id*. at 133.  The Court further noted that "§ 1083 is hardly a model of clarity," and that "[d]uring those first two critical months of the statute's existence, there was not sufficient opportunity for the courts of this Circuit to examine § 1083 in written opinions that counsel might have looked to in an effort to better understand the statute."  *Id*. at 134.  Accordingly, the Court stated that:

> Plaintiffs may wish to consider whether this Court has authority under [Federal Rule of Civil Procedure 60(b)[4]] to grant relief under the circumstances presented by their respective cases…. [P]laintiffs who believe in good faith that they can assert a basis for relief under Rule 60 should heed these words and act with dispatch….

Sept. 30, 2009 Opinion at 134, 136.

Finally, reaching the special masters' compensation motion in this case [Dkt. 435], the Court noted the "extraordinarily time-consuming" work of the masters and expressed regret that the first set of motions for compensation were denied:

---

[3]  As to cases converted from Section 1605(a)(7) cases to Section 1605A cases as provided by Section 1083(c), the Court further held that "service of new federal claims is not required" under the FSIA.  Sept. 30, 2009 Opinion at 131.

[4]  Federal Rule of Civil Procedure 60(b) provides, in pertinent part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding for… reasons [of] mistake, inadvertence, surprise, or excusable neglect;… [or for] any other reason that justifies relief.  Fed. R. Civ. P. 60(b)(1), (6).  As the Court noted, "Rule 60(b) is a powerful tool that grants judges broad authority to accomplish justice in certain limited circumstances."  Sept. 30, 2009 Opinion at 134-35 (citations omitted).

> In denying relief, this Court emphasized that the special masters in *Peterson* are not entitled to the benefits of the new statute because plaintiffs have not taken appropriate action, consistent with § 1083(c), to convert their case into an action under § 1605A.

Sept. 30, 2009 Opinion at 139.  Further, the Court explained that, were Plaintiffs to convert their case in the manner directed, there would not be any other kind of retroactivity issue precluding the payment of special masters through Section 1404C funds as directed by Section 1605A(e). *See id*. at 140 ("Having had an opportunity to recently take a close look at the issue of retroactivity, this Court is not convinced that any sort of retroactiv[ity] problem would serve as a bar to payment of the special masters in these cases.").[5]  Accordingly, the Court denied Plaintiffs' second motion to compensate special masters, holding that "it is not appropriate for this Court to consider the novel approach proposed by the plaintiffs at this time."  Sept. 30, 2009 Opinion at 142.  Rather:

> It seems to this Court that the most prudent course of action at this juncture is to allow counsel to first determine whether, consistent with the guidance offered in this opinion, they might be able to qualify the *Peterson* action for retroactive treatment under § 1605A.

*Id*.  However, notwithstanding the Court's guidance, Plaintiffs' counsel made no effort to convert this action so that they could apply to compensate the special masters through Section 1404C funds.

Instead, nearly three years passed; and then on July 19, 2012, Plaintiffs' counsel filed their third special masters' compensation motion – a variation on their second – asking again that the masters be compensated via the Peace Through Law Foundation.  *See* Motion for Order

---

[5]  Indeed, in a separate, similarly situated FSIA case, *Valore, et al. v. Islamic Republic of Iran et al.*, plaintiffs – represented by certain of the same counsel appearing here – amended their complaint and applied for retroactive application of Section 1605A, in the same manner as directed by the Court above. And on that basis, on November 12, 2010, the Court ordered that the special master employed in *Valore* be compensated by Section 1404C funds.  [Case No. 1:03-cv-01959-RCL, Dkt. 74-1.]

Authorizing Deposit of Funds [Dkt. 474].  This time, Plaintiffs' counsel sought to deposit $500,000 to be paid out to the masters "in the amounts determined in the discretion of the Court[.]"  *Id.* at 5.  In an interim order on this motion, the Court noted that:  "For unknown reasons, plaintiffs never attempted to qualify this case for retroactive treatment under 28 U.S.C. § 1605A; therefore, the special masters never qualified under § 1605A(e)(2) for payment from the Victims of Crime Fund."  Order of Aug. 9, 2012 [Dkt. 475-1] at 2.  "Since the limitations period to qualify under § 1605A has passed in this case, this Court must now address whether plaintiffs' proposed 'privately subsidized subrogation scheme' is appropriate."  *Id.* (internal quotes in original).  Accordingly, the Court requested, via sealed filing, information on the Peace Through Law Foundation, as well as a memorandum on the Court's authority to accept such funds.  *Id.*  The Court received the requested filings from Plaintiffs' counsel, *see* [Dkt. 477], and ultimately denied the motion.  Order of Feb. 21, 2013 [Dkt. 489].  The Court expressed concern that the Peace Through Law Foundation "is a corporation that is controlled and entirely funded by plaintiffs' counsel, Mr. Thomas Fortune Fay and his firm, Fay Kaplan Law, PA," and that under the circumstances then presented, "having the special masters compensated indirectly by plaintiffs' counsel" might give rise to "the appearance of impropriety[.]"[6]  *Id.* at 1-2.

An additional three-plus years passed before Plaintiffs' counsel filed their fourth and latest special masters' compensation motion on May 29, 2016 – the Motion presently before the Court – requesting that the masters be paid from the Partial New York Recovery.

The U.S. District Court for the Southern District of New York had ordered the Partial New York Recovery to be placed into a trust (the "Qualified Settlement Fund" or "QSF") for

---

[6]  The Court further stated that, prompted by this motion, it "conducted *de novo* review of the special masters' recommendations and is confident that the special masters did in fact act with independence in this case, and that their recommendations were valid and proper."  Order of Feb. 21, 2013 [Dkt. 489] at 2.

various judgment creditors, including the Plaintiffs in this case, pending resolution of appellate proceedings pertaining to the recovery.  Order Authorizing Distribution of Funds [SDNY Dkt. 651] at 1-2.  On June 6, 2016, with those appeals having recently been exhausted, the court ordered the trustee of the QSF to begin making distributions to the judgment creditors and their counsel.  *Id.* at 3.  The funds at issue at this point exceed $1.9 billion, *see id.* at 2, though this recovery still falls short of the $2.6 billion judgment in *Peterson* alone.  Judgment [Dkt. 228].  From separate pleadings filed in this case (concerning a fee dispute among counsel), Special Masters Ray and Kruger understand that Plaintiffs' counsel are to receive one-third of the Partial New York Recovery as a portion of their contingency fee.  *See* Memorandum of Points and Authorities [Dkt. 545] at 4.

## II.   <u>LEGAL STANDARDS</u>

Under the statutes and rules governing the allocation and taxation of costs, or alternatively as a sanction, the Court has broad discretion to order the payment of special masters' fees and costs in a manner that serves the interests of justice and fits the particular circumstances of this case.  *See Aird v. Ford Motor Co.*, 86 F.3d 216, 221 (D.C. Cir. 1996) (regarding the allocation and taxation of costs under Rule 53, *see infra*); *In re Ngan Gung Rest., Inc.*, 195 B.R. 593 (S.D.N.Y. 1996) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)) (regarding the imposition of sanctions).

To begin with, Federal Rule of Civil Procedure 53, governing special masters, affords the Court great flexibility in arranging for their compensation.  Fed. R. Civ. P. 53(g).  As circumstances may change following the initial appointment of a master, "the court may set a new basis and terms [for paying special masters] after giving notice and an opportunity to be heard."  Fed. R. Civ. P. 53(g)(1).  The Court may direct that such payment be made "by a party

or parties," or alternately, "from a fund or subject matter of the action within the court's control." Fed. R. Civ. P. 53(g)(2).  In light of the Court's authority over the conduct of counsel at bar, *see e.g.*, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980), counsel may, in appropriate circumstances, be ordered directly to pay for special masters.  *Aird*, 86 F.3d at 222 (citing the predecessor of Rule 53(g); holding that counsel who failed to cooperate in discovery should pay the fees for the special master who had overseen the discovery proceedings).  In determining the fair and appropriate manner of payment of special masters' fees and costs, Rule 53 directs the Court to consider a broad set of factors:  "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master."  Fed. R. Civ. P. 53(g)(3).  In drafting this rule, which was approved and adopted by the U.S. Supreme Court, the U.S. Advisory Committee on Civil Rules further noted that "parties pursuing matters of public interest… may deserve special protection" from the imposition of costs.  Fed. R. Civ. P. 53(h), advisory committee's note (2003).

In addition, special masters' compensation may be allocated under the statute more generally allowing for "taxation of costs" in connection with judicial proceedings, 28 U.S.C. § 1920 – inasmuch as masters are among the "court appointed experts" encompassed by subsection (6) of that statute.  *See Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 546 (9th Cir. 1987) (*citing* 6 J. Moore, W. Taggert, & J. Wicker, *Moore's Federal Practice* ¶ 54.77[3] (1986)); *Saum v. Widnall*, 959 F. Supp. 1310, 1311 (D. Colo. 1997) ("The appointment of Special Master Lyons in this case falls within the meaning of § 1920(6), and his compensation is taxable as an item of costs.").  Like Federal Rule of Civil Procedure 53, Section 1920 gives the Court broad discretion in determining the fair and appropriate allocation of costs. *E.g.*, *Guevara v. Onyewu*, 943 F. Supp. 2d 192, 195 (D.D.C. 2013).

Further, this Court has the "inherent power" to levy sanctions against counsel – a power that "must be exercised with restraint and discretion," but which may rightly be employed "in response to abusive litigation practices." *Roadway Express*, 447 U.S. at 764-65.  The Court's inherent sanctioning power may well be greatest – and is certainly most established – in instances where counsel "fail to prosecute" their clients' claims. *Id*. at 765 (*quoting Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962) (such power is "of ancient origin," and is "necessary in order to prevent undue delays" in the administration of justice)).  An attorney's "failure to prosecute," in this context, may include any dilatory action or failure to diligently pursue any aspect of a client's case. *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 354-55 (D. Conn. 1981) (noting also that the dismissal-for-failure-to-prosecute provision of Federal Rule of Civil Procedure 41(b) underscores the courts' inherent authority to impose more narrowly tailored monetary sanctions).

A number of circuit courts, including the Court of Appeals for the District of Columbia Circuit, have specified that some manner of "bad faith" finding is required in order for sanctions to be imposed against an attorney under the Court's inherent powers. *See United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992); *accord Huthnance v. District of Columbia*, 793 F. Supp. 2d 177, 181 (D.D.C. 2011).  In a failure-to-prosecute case, bad faith sufficient to support sanctions is reflected in "a conscious, intentional decision" to unjustifiably delay or forego action, as opposed to "an inadvertent omission" or a reasoned strategic judgment. *Morrison v. Int'l Programs Consortium, Inc.*, 240 F. Supp. 2d 53, 58 (D.D.C. 2003); *see also United States v. Seltzer*, 227 F.3d 36, 40 (2d Cir. 2000).  Some Circuits have dispensed altogether with the requirement of bad faith in instances where the attorney conduct at issue "is not undertaken for the client's benefit"; in such cases, "a lawyer's negligent or reckless failure to

perform his or her responsibility" may suffice to ground sanctions. *E.g.*, *Seltzer*, 227 F.3d at 41. In all events, the hallmarks of sanctionable attorney conduct are a "serious and studied disregard for the orderly process of justice," *Wallace*, 964 F.2d at 1220, and resulting prejudice to the parties, other counsel, and/or the Court. *Morrison*, 240 F. Supp. 2d at 57 n.8.

Finally, 28 U.S.C. § 1927 provides that "[a]ny attorney… who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." That is, Section 1927 provides a separate basis for the shifting of those specific fees and costs that directly arise from dilatory litigation conduct. Sanctions under this statute may be imposed in response to "deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores[.]" *Huthnance*, 793 F. Supp. 2d at 182 (*quoting Wallace*, 964 F.2d at 1219-20); *see also Morrison*, 240 F. Supp. 2d at 59.

## III.   ARGUMENT

**A.   Whether by Tax or by Sanction, the Court Should Impose Upon Plaintiffs' Counsel Directly the Obligation to Pay Special Masters' Fees and Costs Reasonably Incurred in This Case.**

**1.   Plaintiffs' Counsel Consciously, Intentionally, and Without Justification, Decided to Forego Applying for Section 1404C Funding on Behalf of Their Clients, Causing Prejudice to Plaintiffs and to the Special Masters.**

As the Court has noted, Plaintiffs' counsel's failure to apply for Section 1404C funding to cover the special masters' fees and costs – or even to take preliminary measures toward this end – defies explanation. Order of Aug. 9, 2012 [Dkt. 475-1] at 2 ("For unknown reasons, Plaintiffs never attempted to qualify this case…."). This failure to make a claim cannot credibly be deemed an oversight. Indeed, in its September 30, 2009 Opinion alone, the Court brought the issue to Plaintiffs' counsel's attention no less than *five times*:

(1)     "… At this juncture, counsel in *Peterson* may want to consider filing an amended complaint, consistent with the procedures for related actions in § 1083(c)…."

(2)     "Plaintiffs may want to consider whether this Court has authority under Rule 60(b) to grant relief under the circumstances presented by their respective cases…."

(3)     "[T]he special masters in *Peterson* are not entitled to the benefits of the new statute because plaintiffs have not taken appropriate action, consistent with § 1083(c), to convert their case into an action under § 1605A…."

(4)     "[T]his Court is not convinced that any sort of retroactiv[ity] problem would serve as a bar to payment of special masters in these cases…."

(5)     "It seems to this Court that the most prudent course of action at this juncture is to allow counsel to first determine whether, consistent with the guidance offered in this opinion, they might be able to qualify the *Peterson* action for retroactive treatment under § 1605A."

Sept. 30, 2009 Opinion at 120, 134, 139, 140, 142.  Moreover, lead counsel in this case are also counsel in *Valore*, another case against Iran initiated prior to the 2008 NDAA, which was converted into a Section 1605A proceeding and as to which Section 1404C funds were successfully obtained to compensate a special master almost six years ago.  [Case No. 1:03-cv-01959-RCL, Dkt. 74-1].  Thus, there can be no dispute that Plaintiffs' counsel's decision to forego applying for Section 1404C funding in this case was made consciously and intentionally. *See Morrison*, 240 F. Supp. 2d at 59.

As discussed above, this decision was without justification.  It did not serve the Plaintiffs' interests for their attorneys to forego making a Section 1404C funding claim.  Indeed, this decision could only have inured to Plaintiffs' financial detriment – as in fact it does under the present circumstances, threatening to reduce Plaintiffs' recovery from the New York action.  Nor could Plaintiffs' counsel reasonably have written off the Section 1404C claim as futile, speculative, or unworthy of the effort required.  Having provided such detailed guidance to counsel, the Court substantially reduced the "transaction cost" of making a Section 1404C claim.

Further, as the Court noted, the Section 1083(c) conversion mechanisms clearly evidenced Congress's intent that "cases… previously decided or pending under § 1605(a)(7) may be brought within the reach of the revised terrorism exception § 1605A[.]"  Sept. 30, 2009 Opinion at 140.  And if there were any doubt at all, the success of the Section 1404C claim in *Valore* should have militated action in this case in 2010.  *See supra*, note 5.

Ultimately, Plaintiffs' counsel's decision to forego seeking Section 1404C funds undermined their clients' interests; it disregarded the Court's guidance; it frustrated the will of Congress; and it has resulted in a substantial delay in compensating the special masters employed in this case.  This decision provides an ample basis for requiring Plaintiffs' counsel to pay the special masters' fees and costs directly.

While Plaintiffs' counsel have commendably obtained a sizeable judgment for their clients and are working towards collecting on that judgment, this aspect of their work was unjustifiable and has needlessly prevented the special masters from being compensated for their service.

> **2.      Principles of Fairness and Equity Require That Plaintiffs' Counsel Bear These Costs Directly, Rather Than Pass Them on to Plaintiffs, At Least Pending Full Recovery From Defendants.**

For the reasons stated above, the optimal outcome on the special masters' compensation question would have been the procurement of Section 1404C funding, predicated on the conversion of *Peterson* into a Section 1605A action; but as the Court has indicated, the passage of time has foreclosed this option.  Order of Aug. 9, 2012 [Dkt. 475-1] at 2.  The question before the Court, then, is ultimately this:  What is the fairest and most equitable remaining outcome?  In addressing this question, the Court should consider the particular circumstances of the case, Fed. R. Civ. P. 53(g)(2), *Aird*, 86 F.3d at 221, and should take care to protect parties, like the Plaintiffs, who are "pursuing matters of public interest" by seeking to hold Iran legally

accountable for the 1983 Beirut bombing.[7]  Fed. R. Civ. P. 53(h), advisory committee's note (2003).

Special Masters Loraine Ray and Karen Kruger respectfully submit that the resolution sought by Plaintiffs' counsel's Motion is not the fairest and most equitable remaining outcome. Indeed, it is decidedly unfair to reduce Plaintiffs' recovery as a consequence of the decision that Plaintiffs' counsel made to forego Section 1404C funding.  It is, on balance, far more equitable to allocate these costs directly to the attorneys than to allocate the costs to Plaintiffs.  *Aird*, 86 F.3d at 222 (upholding the allocation of special masters' fees and costs to responsible counsel).

Of course, a fairer and more equitable outcome still would be for Defendants to cover these fees and costs, *see* Fed. R. Civ. P. 53(g)(2) (allowing for the shifting of special masters' fees and costs to culpable parties), but that outcome is not available at this time.  Special Masters Ray and Kruger cannot purport to know whether sufficient Iranian assets are likely to be recovered to fully pay Plaintiffs' cognizable damages,[8] much less special masters' fees and costs. As indicated above, if sufficient funds were ultimately to be recovered from Defendants to *both* fully compensate Plaintiffs *and* cover, in whole or in part, the masters' fees and costs, then such funds at that point should reimburse any payment of special masters' compensation.  However, even if only for an (indeterminate) interim period, Special Masters Ray and Kruger respectfully submit that it is unfair for Plaintiffs to be further burdened financially – and that it serves the interests of justice, all facts and circumstances considered, for Plaintiffs' counsel directly to bear these costs pending full recovery from Defendants.

---

[7]  The Court has noted the public interests advanced by the Plaintiffs' testimony and other contributions in this case.  *See*, *e.g.*, Memorandum Opinion [Dkt. 24] at 29-30 (May 30, 2003).

[8]  At present, the recovery appears to be approximately $700 million short.  *See* Order Authorizing Distribution of Funds [SDNY Dkt. 651] at 2; Judgment [Dkt. 228].

**3.      In the Instant Circumstances, Plaintiffs' Counsel's Direct Payment of Special Masters' Fees and Costs Would Present No Impropriety or Appearance Thereof.**

In 2013, the Court had qualms about Plaintiffs' counsel indirectly (through the Peace Through Law Foundation) paying special masters' fees and costs. "The Court [found] that having the special masters compensated indirectly by plaintiffs' counsel… might cast doubt on the fairness of the procedures in this case." Order of Feb. 21, 2013 [Dkt. 489] at 1-2. The Court noted, however, that there were no indications of actual impropriety: "the special masters did in fact act with independence," and the Court's sole concern was "the *appearance* of impropriety[.]" *Id.* at 2 (emphasis added).

Special Masters Ray and Kruger respectfully submit that, in the present posture, no appearance of impropriety would arise. The requested allocation of fees and costs would be direct and transparent and would effectively derive from Plaintiffs' counsel's share of the Partial New York Recovery, rather than pass through an intermediary foundation. It would follow the Court's finding that the special masters acted independently and professionally. And most importantly, it would be accompanied by additional findings establishing Plaintiffs' counsel's responsibility arising from counsel's failure to convert this case into a Section 1605A action.

**B.      Plaintiffs' Counsel Should Be Required Directly to Pay Interest to the Special Masters, Based on Their Reasonable Fees and Costs Incurred, Accruing from a Reasonable Date Following Plaintiffs' Counsel's Refusal to Apply for Section 1404C Funds.**

Like the other *Peterson* special masters, Ms. Ray and Ms. Kruger completed their work years ago. On April 22, 2008, Ms. Ray submitted a revised voucher for payments totaling $209,374, Motion at 2; this voucher reflects $208,000 in fees for 208 days of work and seeks reimbursement for $1,374 in service-related expenses. [Dkt. 242-1]. Ms. Kruger submitted a voucher on May 1, 2008 for payments totaling $34,838, Motion at 2; this voucher reflects

$34,500 in fees for 34.5 days of work and seeks reimbursement for $338 in expenses.  [Dkt. 436-5].  At the present time, more than eight years later, neither these special masters nor the others employed in this case have yet received any payment.  Certainly, Special Masters Ray and Kruger understand that some delay in payment was unavoidable – indeed the masters' Administrative Plan itself contemplates some delay, providing that "[p]ayment is contingent upon receipt of funding from public or private sources…."  Administrative Plan ¶ 3.  But what is striking in this case is how much delay was utterly unnecessary.

Indeed, it was only about a year-and-a-half after Ms. Ray and Ms. Kruger submitted their vouchers that the Court provided its September 30, 2009 guidance regarding Section 1605A conversion and Section 1404C funding.  It should not have taken longer than one more year to take the steps required to obtain Section 1404C funds.  By way of reference, the *Valore* Section 1404C motion was granted by this Court on November 12, 2010.  [Case No. 1:03-cv-01959-RCL, Dkt. 74-1.]  Since Plaintiffs' counsel could and should also have obtained Section 1404C funding by at latest November 12, 2010, Plaintiffs' counsel should be liable for interest running from that date to the present.

What has resulted from Plaintiffs' counsel's failure to apply for Section 1404C funds is a tangible, significant, and wholly unnecessary cost to Ms. Ray, Ms. Kruger, and the other *Peterson* special masters.  It is well established that "interest compensates for the time value of money and thus is often necessary for full compensation."  *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992); *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997).  Indeed, in both Ms. Ray's case and Ms. Kruger's case, the deprivation of the use-value of the payments due resulting from Plaintiffs' counsel's unnecessary delay exceeds the

out-of-pocket costs for which reimbursement is sought.[9]   It is inequitable that the special masters

should wait for years for payment while Plaintiffs' counsel disregard the Court's guidance and

forego making available claims for funding.

The Court can, and should, order Plaintiffs' counsel directly to pay interest arising from

unnecessary delay.   There is precedent in analogous circumstances where the Court has ordered

payment of pre-judgment interest:   "The purpose of such awards is to compensate… for any

delay in payment resulting from the litigation."   *Holbrook v. District of Columbia*, 305 F. Supp.

2d 41, 47 (D.D.C. 2004); *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 (D.D.C.

2004).[10]   The Court's authority to order such payments stems from its equity powers, and such

payments are rightly ordered where interest accrues as a result of unreasonable delay or

unsupported litigation decisions.   *Holbrook*, 305 F. Supp. 2d at 47; *Kaseman*, 329 F. Supp. 2d at

28).   In the instant case, the Court's equitable powers are affirmed and enhanced by the statutory

and regulatory provisions – 28 U.S.C. § 1920(6) and Federal Rule of Civil Procedure 53(g) – that

provide for broad judicial discretion on matters pertaining to special masters' compensation.

---

[9]   The manner for computing interest is within the Court's discretion.   *See Griffin v. Washington Convention Ctr.*, No. CIV. A. 93-2297, 2000 WL 1174967, at *6 (D.D.C. July 21, 2000) (citing *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 450 (D.C. Cir. 1996)).   This District has generally calculated interest to compensate for delay using the "prime rate," that is, "the rate that banks charge for short-term unsecured loans to credit-worthy customers," *e.g.*, *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 (D.D.C. 2004) (computing pre-judgment interest), compounded on an annual basis, *e.g.*, *In re Butler Innovative Sols., Inc.*, No. 08-00065, 2015 WL 5118684, at *1 n.1 (Bankr. D.D.C. Aug. 28, 2015). Applying an interest rate of 3.25%, which has been the U.S. prime rate for the bulk of the period at issue, *see* Bloomberg Markets, Prime Rate by Country (United States), *available at* http://www.bloomberg.com/quote/PRIME:IND, the undersigned estimate that the interest due to Special Master Ray alone is approximately $44,283.   Applying the same method of computation, the interest due to Special Master Kruger is approximately $7,368.

[10]   *Holbrook* and *Kaseman* each concerned awards of pre-judgment interest on attorneys' fees to prevailing parties in Individuals with Disabilities Education Act (IDEA) litigation.   *Holbrook*, 305 F. Supp. 2d at 44; *Kaseman*, 329 F. Supp. 2d at 23.

Finally, where, as here, the underlying payments are to attorneys who have contributed their time to public service, there is an additional consideration.  As courts of this Circuit have noted, unreasonable delay in providing such compensation "produces serious chilling effects on the availability of competent, experienced attorneys to serve" their community.  *Kaseman*, 329 F. Supp. 2d at 29; *accord Holbrook*, 305 F. Supp. 2d at 48 (it would "discourage lawyers who do such important work" to "fail[] to pay them for their services in a timely fashion").  It is not hard to see how an unnecessary six-year delay in payment might discourage qualified attorneys in the future from contributing their time to work as special masters.  By ensuring that the masters in this case are fully, if belatedly, compensated for their service, the Court might preclude or lessen such a chilling effect.

**C.      Plaintiffs' Counsel Should Be Required Directly to Make Payment to Special Masters Loraine Ray and Karen Kruger for Reasonable Attorneys' Fees and Costs Incurred in Connection with this Pleading and Any Related Proceedings in this Case.**

It is unfortunate that this pleading was required.  As detailed above, Plaintiffs' counsel had ample opportunity to seek prompt and complete compensation for the special masters in a manner that did not compromise their clients' recovery.  For reasons never stated, they declined to do so.  Therefore, because Plaintiffs' counsel have unreasonably and without justification given rise to these immediate proceedings, 28 U.S.C. § 1927, and because they have acted deliberately in a manner that has prejudiced their clients' and the special masters' interests, *Huthnance*, 793 F. Supp. 2d at 182, Special Masters Ray and Kruger respectfully request that the Court order Plaintiffs' counsel directly to pay reasonable attorneys' fees and costs incurred in connection with the filing of this pleading and any subsequent, related proceedings in this case.

**D.     Any Tax or Sanction Imposed by the Court Should Hold Jointly and Severally Liable Plaintiffs' Counsel of Record Who Were Responsible for the Decision to Forego Applying for Section 1404C Funds.**

Special Masters Ray and Kruger submit that the aforementioned fees and costs be allocated to Plaintiffs' counsel directly as a taxed cost, or alternately as a sanction, for the reasons stated and on the terms described above.  Obligation to make such payment should be imposed, jointly and severally, on Plaintiffs' counsel who were responsible for the decision to forego taking the requisite steps to apply for Section 1404C funding to compensate the special masters employed herein.  *Aird*, 86 F.3d at 222 (upholding the district court's order to impose joint and several liability among counsel for the payment of special masters' costs); *see also Cleminshaw*, 93 F.R.D. 348; *Tolerico v. Home Depot*, 205 F.R.D. 169, 177-78 (M.D. Pa. 2002) ("As both Wright & Associates and Atty. Donahue serve as co-counsel for Ms. Burns, and as each shoulders responsibility for the failure to comply with Rule 26(a), each will be responsible for 50 percent of the monetary sanction imposed by this decision.").  However, Special Masters Ray and Kruger recognize that this obligation should not extend to counsel who could not fairly be held responsible for this decision.  *See Aird*, 86 F.3d at 222-24; *Cleminshaw*, 93 F.R.D. at 351.

Special Masters Ray and Kruger defer to the Court as to the precise manner to allocate costs; but they respectfully submit that the Court should consider the responsibilities of the attorneys who appeared and remained as counsel of record for Plaintiffs as of September 30, 2009, when the Court provided guidance as to subsequent proceedings in this case.

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Order Authorizing Payment of Funds for Compensation of Special Masters of This Court  [Dkt. 534]; and instead of the order requested by Plaintiffs' counsel, the Court should order that Plaintiffs'

counsel responsible for the aforementioned decisions pertaining to special masters' compensation in this litigation: (1) directly pay special masters' fees and costs reasonably incurred in this case, at least pending full recovery from Defendants; (2) directly pay interest to the special masters employed in this case, based on their reasonable fees and costs incurred, accruing from November 12, 2010; and (3) directly make payment to Special Masters Loraine Ray and Karen Kruger for reasonable attorneys' fees and costs incurred in connection with Plaintiffs' pending motion, including in connection with the submission of this pleading.

Dated:  September 21, 2016

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

*/s/ Joseph A. Rillotta*
Joseph A. Rillotta (#492852)
Rachel M. Share (*pro hac vice* motion pending)
1500 K Street, N.W.
Washington, D.C.  20005-1209
(202) 842-8800 (telephone)
(202) 842-8465 (facsimile)
Joseph.Rillotta@dbr.com (email)

*Attorneys for Special Masters Loraine Ray and Karen Kruger*

## CERTIFICATE OF SERVICE

I hereby certify the foregoing was filed electronically via the Court's ECF system on this 21st day of September, 2016 and was served electronically at that time on all counsel of record, all of whom are registered to receive filings via the Court's ECF system.  Counsel of record in this matter are listed below.

Bijan Amini
Storch, Amini & Munves, P.C.
140 East 45th Street
2 Grand Central Tower, 25th Floor
New York, NY 10017

Alan Lee Balaran
Law Office of Alan L. Balaran, PLLC
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, DC 20006

Bradford A. Berenson
Griffith L. Green
Sidley Austin, LLP
1501 K Street, NW
Washington, DC 20005

David I. Bledsoe
David I. Bledsoe, Esq.
600 Cameron Street
Suite 203
Alexandria, VA 22314

Ferris Ridgely Bond, Sr.
Jane Carol Norman
Bond & Norman Law P.C.
777 Sixth Street, NW
Suite 410
Washington, DC 20001

Bruce Edward Clark
Alexander J. Willscher
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Kay M. Clarke
5450 Burford Street
San Diego, CA 92111

David J. Cook
Cook Collection Attorneys, P.L.C.
165 Fell Street
San Francisco, CA 94102-5106

Wayne Frank Cyron
Cyron & Miller, LLP
100 North Pitt Street
Suite 200
Alexandria, VA 22314-3134

William Coleman Dowden, III
5922 Crown St.
Capitol Heights, MD 20743

Joseph Peter Drennan
Joseph Peter Drennan, Attorney-at-Law
218 North Lee Street
3rd Floor
Alexandria, VA 22314

Thomas Fortune Fay
Molly Hoffman Wolfe
Fay Law Group, P.A.
777 Sixth Street, NW
Suite 410
Washington, DC 20001

Robert Peter Feeney
Robert P. Feeney, Esquire
4 Professional Drive
Suite 134
Gaithersburg, MD 20879

Jerry R. Hauser
Eric D. Miller
Millerhauser Law Group LLP
790 Mission Avenue
San Rafael, CA 94901

James H. Hulme
Arent Fox LLP
1717 K Street, NW
Washington, DC 20036-5344

Annie P. Kaplan
Fay Kaplan Law PA
777 6th Street, NW
Suite 410
Washington, DC 20001

Anthony J. LaSpada
1802 North Morgan Street
Tampa, FL 33602

Robert W. Littleton
Littleton Joyce Ughetta Park & Kelly, LLP
39 Broadway
34th Floor
New York, NY 10006

Tuna Mecit
8 Schindler Court
Suite 422
Silver Spring, MD 20903-1329

Alex Young K. Oh
Kirkland & Ellis LLP
655 Fifteenth Street NW
Suite 1200
Washington, DC 20005

Frank Panopoulos
Francis A. Vasquez, Jr.
White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Steven Robert Perles
Perles Law Firm, PC
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036

Allen Louis Rothenberg
Law Firm of Allen L. Rothenberg
1420 Walnut Street
2nd Floor
Philadelphia, PA 19102

John Vail
John Vail Law PLLC
777 6th Street, NW
Suite 410
Washington, DC 20001

Dated:  September 21, 2016                    DRINKER BIDDLE & REATH LLP

/s/ Joseph A. Rillotta
Joseph A. Rillotta (#492852)
1500 K Street, N.W.
Washington, D.C.  20005-1209
(202) 842-8800 (telephone)
(202) 842-8465 (facsimile)
Joseph.Rillotta@dbr.com (email)

*Attorney for Special Masters Loraine Ray and
Karen Kruger*