**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEBORAH D. PETERSON**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | )     **Civil Action No. 01-2094 (RCL)** |
| | ) |
| **ISLAMIC REPUBLIC OF IRAN**, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION**

## I.     INTRODUCTION

For over fifteen years now, this Court has presided over a consolidated action brought by nearly one thousand plaintiffs against the Islamic Republic of Iran (Iran) under the state sponsor of terrorism exception to the Foreign Sovereign Immunities Act (FSIA). On May 30, 2003, this Court entered a default judgment as to liability against the defendants and ordered claims for the amounts of damages be submitted to special masters. Those special masters issued almost two hundred reports and recommendations that this Court considered in determining the compensatory and punitive damages. On December 7, 2007, this Court entered a default judgment in favor of plaintiffs for more than $2 billion. The special masters now seek payment.

Before this Court are plaintiffs' Motion [ECF No. 534] for Order Authorizing Payment of Funds for Compensation of Special Masters of this Court; the Response [ECF No. 557] of Special Masters Loraine Ray and Karen Kruger to Plaintiffs' Motion for Order Authorizing Payment of Funds for Compensation of Special Master of this Court ("Response of Special Masters Ray and Kruger"); and Plaintiffs' Reply [ECF No. 558] to Response of Special Masters Loraine Ray and

Karen Kruger. For the reasons discussed below, this Court will **DENY** the motion and **DENY** the additional relief sought in the Response of Special Masters Ray and Kruger.

## II.   BACKGROUND

On October 23, 1983, suicide bombers from Hezbollah, with the help of Iran, murdered 241 American servicemen.   Plaintiffs here consist of family members of the 241 servicemen who perished, as well as administrators of the estates of the servicemen, the servicemen's legal heirs, and injured survivors of that attack.   Plaintiffs brought this action in October 2001 under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605(a)(7).[1]   Given the nearly one thousand claimants seeking redress and the commensurately large number of claims, this Court appointed no fewer than 16 special masters. *See* ECF Nos. 30-39 (appointing John Swanson, John Carney, Veta Carney, Karen J. Kruger, Paul G. Griffin, Susan Meek, Howard P. Rives, Francis B. Fennessey, David L. Broom and Loraine A. Ray), and ECF Nos. 42-46 (appointing Kenneth M. Trombly, Jeffrey A. Manheimer, Christopher A. Byrne, Philip M. Saeta, and Colin M. Dunham). Their task was to "undertake a very thorough, painstaking review of all the relevant testimony, medical evidence, economic reports, and other evidence in order to make clear, accurate recommendations" to the court relating to the damages suffered by each plaintiff. *In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31, 110 (D.D.C. 2009). In keeping with their mandate, the special masters undertook "to review hundreds, if not thousands of documents, including economic reports and deposition testimony"—work which "demand[ed] great attention to detail and [was] extraordinarily time-consuming." *Id.*

---

[1] While this case was pending, Congress repealed and replaced many of the provisions of FSIA as a part of the 2008 National Defense Appropriations Act for Fiscal Year 2008 (NDAA). Critically, this replaced the original state sponsor of terrorism exception—28 U.S.C. § 1605(a)(7)—with the current exception: 28 U.S.C. § 1605A. *See* Pub.L. No. 110–181, § 1083, 122 Stat. 3, 338–44. The effects of this change were extensively covered by this Court in *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31 (D.D.C. 2009) and are relevant to the discussion below.

In 2013, plaintiffs successfully brought an action in the United States District Court for the Southern District of New York to seize Iranian assets in satisfaction of this Court's judgment. The S.D.N.Y. court ordered the turnover of $1.75 billion in assets held by Citibank N.A., cash bonds that Bank Markazi—the Central Bank of Iran—held in an account through an intermediary. The court's order created a qualified settlement fund (QSF trust) and transferred the seized funds to a trustee—the Honorable Stanley Sporkin—for the benefit of the plaintiffs. The court's order was affirmed by both the Second Circuit[2] and the United States Supreme Court.[3]

Plaintiffs now request this Court compensate the Special Masters from those funds, pursuant to Federal Rule of Civil Procedure 53(g). But this Court has fielded requests for payment of Special Masters before. Therefore, before addressing the merits of plaintiffs' motion and to provide additional context, this Court briefly reviews some of the previous filings concerning the compensation of these special masters.

a. Plaintiffs' First Motion Seeking Compensation for the Special Masters

Plaintiffs' first series of motions were brought on behalf of three of the special masters. The first two, filed on April 22, 2008, were captioned Motion [ECF No. 242] to Disburse Fund to Special Master Ray and Motion [ECF No. 243] to Disburse Funds to Special Master Swanson. The third, filed on May 1, 2008, was captioned Motion [ECF No. 253] to Disburse Funds to Special Master Kruger. All three predicated their prayer for relief on 28 U.S.C. § 1605A, rather than 28 U.S.C. § 1605(a)(7). Critically, § 1605A specifically allows courts to appoint special masters and requires money from the Victims of Crime Fund drawn "to cover the costs of special masters appointed." 29 U.S.C. § 1605A(e).

---

[2] *Peterson v. Islamic Republic of Iran*, 758 F.3d 185 (2014).
[3] *Bank Markazi v. Peterson*, 136 S.Ct. 1310 (2016).

Plaintiffs filed their requests for payment assuming that § 1605A applied with automatic and retroactive force to actions filed under 1605(a)(7).  Rejecting plaintiffs' theory, this Court denied plaintiffs' request on January 13, 2009 [ECF No. 430] explaining that 1605A(e) could not be retroactively applied given: (1) the plain language of 1605A(e)(2), which limits payment to Special Masters to cases "brought or maintained under *this section* [1605A]" (emphasis added), and (2) the D.C. Circuit's ruling that: "[A] plaintiff in a case pending under § 1605(a)(7) may not maintain that action based upon the jurisdiction conferred by § 1605A; in order to claim the benefits of § 1605A, the plaintiff must file a new action under that new provisions."  Memorandum Opinion and Order [ECF No. 430] 2 (quoting *Simon v. Republic of Iraq*, 529 F.3d, 1187, 1192 (D.C. Cir. 2008)).

b.  <u>Plaintiffs' Second Motion Seeking Payment for Special Masters</u>

On April 8, 2009, plaintiffs filed their second request, captioned Motion [ECF No. 435] for Order Authorizing Payment to Special Masters of this Court ("Motion Authorizing Payment"), seeking compensation for nine of the appointed masters. Plaintiffs grounded their second request on Federal Rule of Civil Procedure 53(g)(2)(A)-(B), which permits a court to compensate a special master either "by a party or parties" or "from a fund or subject matter of the action within the court's control." Specifically, plaintiffs asked the Court to enter an order "approving payments by the Peace Through Law Foundation, Inc. directly to the Special Masters . . . in amounts acceptable to the Court." Motion [ECF No. 435] Authorizing Payment 4. Given the absence of any information shedding light on the Foundation's membership, its organizational structure, and the source of funding, this Court, by Order [ECF No. 440] dated September 30, 2009, denied plaintiffs' request, without prejudice. Rather, this Court considered the most prudent course of action was for counsel to determine, consistent with the guidance offered in its omnibus opinion—published as

- 4 -

*In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31 (D.D.C. 2009)—whether the action might qualify for retroactive treatment under § 1605A.

      c.   <u>Omnibus Opinion</u>

      This Court's omnibus opinion considered the constitutional and practical implications of the newly codified § 1605A and its impact on *Peterson* and 19 other cases filed under § 1605(a)(7). In its broadest strokes, this Court, as a matter of first impression, examined the constitutionality of NDAA § 1083, which authorized individuals who had obtained final judgments under § 1605(a)(7) of the FSIA to file new actions under § 1605A if they are related to currently pending actions. *In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31 (D.D.C. 2009). Following a painstaking analysis, the Court held that § 1083(c)(2) did not require the reopening of final judgments, in contravention of Article III of the Constitution, because the newly created federal cause of action "allow[s] for new actions that simply were not available" before the enactment of 1605A. *Id.* at 77. The Court also examined NDAA § 1083(c)(3)(B), holding that it did not run afoul of established constitutional principles. *Id.* at 86. Concluding that both provisions under NDAA § 1083 survived scrutiny, the Court explained that either provided a potential conduit for plaintiffs wishing to pursue remedies previously unavailable under 1605(a)(7), such as punitive damages or special master fees. Thus, while not automatically retroactive, § 1083(c)(2) allowed prior actions to proceed under § 1605A under certain circumstances,[4] and § 1083(c)(3) allowed plaintiffs to file a related action under § 1605A, even if it was arising out of the same act or incident that was litigated under § 1605(a)(7).[5]

---

[4] The plaintiff must demonstrate the prior action was: (1) relied on § 1605(a)(7) or the Flatow Amendment as creating a cause of action, (2) has been adversely affected on the grounds that either or both of those provisions failed to create a cause of action against the state, and (3) as of the date of the enactment of the 2008 NDAA, the case was before the court in any form, including on appeal or motion under Rule 60(b) of the Federal Rules of Civil Procedure.

[5] NDAA § 1083(c)(3)(B) waived the defenses of res judicata, collateral estoppel, and statutes of limitations for refiled or related actions.

Under NDAA § 1083(c)(2), this Court advised that plaintiffs could avail themselves of 28 U.S.C. § 1605A by filing a motion to alter or amend judgment under Rule 59(e) or a motion seeking relief from judgment under Rule 60(b).  Under NDAA § 1083(c), plaintiffs could dismiss actions filed under 28 U.S.C. § 1605(a)(7) and refile under 28 U.S.C. § 1605A. In the context of special masters, this Court has noted that "assuming the procedures in § 1083(c) are complied with, or assuming that there is some way for plaintiffs to overcome the procedural deficiencies in their cases by way of Rule 60(b) motion, or otherwise, this Court sees no reason why it would not have authority to issue an order directing that the special masters receive payment from the Victims of Crime Fund." *In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31, 112 (D.D.C. 2009)

But regarding the *Peterson* case, this Court observed that, notwithstanding its status as "essentially the lead action of the cases filed based on the Beirut attack," *id.* at 101, the *Peterson* plaintiffs "never filed a motion pursuant to § 1083(c)(2) and they have not filed a new action under § 1083." *Id.* at 101. This Court did not foreclose plaintiffs from seeking relief under 1605A, reasoning that "at least some of these apparent failures to qualify actions under § 1605A are due to misunderstanding or misapplication of the statutory language within § 1083." *Id.* at 108. Rather, the Court invited *Peterson* counsel to examine other cases such as *Bonk v. Islamic Republic of Iran*, (08–cv–1273) or *Valore v. Islamic Republic of Iran*, (03-cv-1959), in considering whether to file an amended complaint under § 1605A. *Id.* at 101. The Court further suggested that plaintiffs seeking reconsideration under Rule 59(e), *id.*, at 94, or Rule 60(b) might succeed provided certain statutory conditions were met. *Id.* at 100, 107. The *Peterson* plaintiffs did not avail themselves of either suggestion.

        d.  <u>Plaintiffs' Third Motion Seeking Payment for Special Masters</u>

Almost three years later, on July 19, 2012, plaintiffs tendered their third request for special master fees.  In a filing captioned, Motion [ECF No. 474] for Order Authorizing Deposit of Funds into the Registry of the Court for Compensation of Special Masters of this Court, plaintiffs asked the court (1) to authorize the Peace Through Law Foundation (the "Foundation") to deposit $500,000 into the registry of the United States District Court from which the Court could direct payments to the special masters, and (2) that the Court impose those fees on defendants Iran and the Ministry of Information and Security of the Islamic Republic of Iran.

This Court once again observed that "[f]or some unknown reasons, plaintiffs never attempted to qualify this case for retroactive treatment under 28 U.S.C. § 1605A; therefore the special masters never qualified under § 1605A(e)(2) for payment from the Victims of Crime Fund." Order [ECF No. 475-1] 2. On August 8, 2012, this Court ordered plaintiffs to file both (1) a memorandum disclosing the membership structure of the Foundation as well as its source of funds and (2) a memorandum addressing the legal basis for the Court's authority to distribute these funds to the special masters and whether these payments may be levied against the defendants pursuant to the FSIA. *Id.*

On September 10, 2012, plaintiffs complied and filed their Memorandum [ECF No. 477] of Plaintiffs in Response to Order of Court Entered August 9, 2012 Regarding Authority of Court and Taxation of Costs. Plaintiffs argued that the Court's power to tax defendants arose from the general powers inherent in courts pursuant to Rule 53(g)(2)(B)—powers, they urged, which should be liberally exercised in light of Iran's wholesale endorsement of terrorist activities. Information concerning the membership structure of the Foundation and its source of funding was filed separately, under seal.

On February 21, 2013, this Court denied Plaintiffs' Motion to channel Foundation funds through the court registry on the grounds that the Foundation's status as "a corporation that is controlled and entirely funded by plaintiffs' counsel, Mr. Thomas Fortune Fay and his firm Fay Kaplan Law, PA," created an impermissible "appearance of impropriety." Order [ECF No. 489] 1-2.

### e.  Plaintiffs' Fourth Motion Seeking Payment for Special Masters

Rebuffed in their attempts to apply 1605A retroactively automatically without first triggering NDAA §§ 1083(c)(2) or (3) and having failed to convince the Court to funnel funds, directly or indirectly, through counsel's wholly-owned and controlled Foundation, the *Peterson* plaintiffs filed the instant motion. Plaintiffs now ask this Court to exercise its authority under Rule 53(g) to impose the costs of Special Master fees on the defendants—this time by directing that payments be made from the QSF trust intended to compensate plaintiffs and their counsel.  Motion [ECF No. 534] for Order Authorizing Payment of Funds for Compensation of Special Master of this Court 2.

On September 21, 2016, two of the special masters filed a Response [ECF No. 557] of Special Masters Loraine Ray and Karen Kruger to Plaintiffs' Motion for Order Authorizing Payment of Funds for Compensation of Special Master of this Court ("Response of Special Masters Ray and Kruger"). Special Masters Ray and Kruger urge this Court to deny plaintiffs' motion and, instead, "impose a tax or sanction on Plaintiffs' counsel directly, requiring counsel directly to pay for the reasonable, special masters' fees and costs." Response of Special Masters Ray and Kruger 2-3.

In support, the special masters argue that sanctions are properly levied against *Peterson* counsel due to their failure to avail themselves of relief under Section 1083 either by refiling a new action under 1605A or seeking reconsideration under Rules 59(e) or 60(b). They maintain

that counsel's indifference to the Court's numerous remonstrations in the Omnibus Opinion, reflect a "conscious, intentional decision," rising to the level of "bad faith." *Id.* at 13. They further argue that these "abusive litigation practices," coupled with the "'failure to prosecute' their clients' claims," compel the imposition of sanctions pursuant to the court's "inherent authority." *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-5 (1980)).

Plaintiffs oppose the special masters' prayer for sanctions, arguing that (1) the request betrays a skewed interpretation of Omnibus Opinion, (2) that the request betrays an ignorance of the procedural difficulties and the risks inherent in vacating the prior judgment and filing an amended complaint, and (3) that the request misunderstands the impact any attendant delays would have had on the security of the Iranian assets. Plaintiffs' Reply [ECF No. 558] to Response of Special Masters Ray and Kruger 3. Plaintiffs further maintain that a request for sanctions cannot lie as Plaintiffs' counsel have disobeyed neither the Federal Rules of Civil Procedure, this Court's orders, nor any duty owed the *Peterson* plaintiffs. *Id.* at 8. They conclude by observing that "Ray and Kruger cannot point to any duty owed to them by counsel for Plaintiffs which would be equivalent to the duties owed to the clients." *Id.*

### III.   LEGAL STANDARDS

In actions brought under 28 U.S.C. § 1605A, courts may appoint special masters to hear damages claims and may compensate the special masters with pursuant to § 1605A(e). No such provision exists for actions brought under 28 U.S.C. § 1605(a)(7).

More generally, the Federal Rules of Civil Procedure provides rules governing the appointment and compensation of special masters in other cases. Rule 53(g) states that, before or after judgment, "the court must fix the master's compensation on the basis and terms stated in the appointing order, but the court may set a new basis and terms after giving notice and an opportunity to be heard."

Fed. R. Civ. P. 53(g). The compensation must be paid either (1) by the parties or (2) from a fund within the court's control. *Id.* When allocating the payments to the parties, the Court must consider: "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." *Id.* Thus, the district court enjoys broad discretion to allocate the master's fees as it thinks best under the circumstances of the case. *See Aird v. Ford Motor Co.*, 86 F.3d 216, 220 (D.C. Cir. 1996), amended (Aug. 12, 1996).

The district court has broad discretion to "tax as costs" the "[c]ompensation of court appointed experts." *See* 28 U.S.C. § 1920(6). Insofar as special masters are court appointed experts under subsection (6), the court has the statutory authority to tax costs directly from counsel, at the courts discretion. "The taxing of the cost of a special master [under 28 U.S.C. § 1920] against a nonprevailing party is clearly within a district court's discretion and no factual showing of necessity is required." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 134 (5th Cir. 1983).

The Court also has an inherent power to sanction counsel, which "must be exercised with restraint and discretion. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980). This power "is not a broad reservoir of power, ready at an imperial hand." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 (1991) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990)). Rather, this limited power stems from the need to make the courts function. *Id.* Sanctions therefore require special justification, and the authority to sanction bad-faith litigation practices can be exercised only when necessary to preserve the authority of the court. *Id.* at 64.

## IV.   ANALYSIS

At the outset, it should be noted that, notwithstanding the special masters' caption of the sanctions request as a "response" to plaintiffs' fourth motion for fees, their filing constitutes an

affirmative request that this court levy sanctions in the form of costs and interest against *Peterson* counsel. Courts "must determine the proper characterization of a motion by the nature of the relief sought," and not its heading or legend. *United States v. Palmer*, 296 F.3d 1135, 1145 (D.C. Cir. 2002). Because Special Masters Ray and Kruger seek the separate relief of monetary charges imposed upon plaintiffs' counsel, this Court construes the response as a motion for sanctions. Therefore, this Court considers two motions: one for payment of special masters and one for sanctions against plaintiffs. The Court will consider them separately.

### A. Plaintiff's motion fails because the QSF Trust is for the benefit of the *Peterson* plaintiffs, and not the special masters.

Plaintiffs argue that this Court has the discretion to order payments to the special masters pursuant to Rule 53(g), which provides for the imposition of special masters costs upon a party. Plaintiffs argue that the special masters should be paid out of the QSF trust, which consists of assets seized from defendant Iran. Plaintiffs further cite to S.D.N.Y. District Judge Katherine B. Forrest's July 9, 2013 opinion, which directed the distribution of $1.9 billion in assets held by Citibank, N.A. to the QSF trust. That order noted that the trust was "created for the benefit" of the *Peterson* plaintiffs, and required a court order authorizing distribution "in accordance with the terms of the Plaintiff's agreement concerning the distribution of those funds." *Peterson v. Islamic Republic of Iran*, No. 10-cv-4518 (KBF), 2013 U.S. Dist. LEXIS 188219, at *55, 59 (S.D.N.Y. July 9, 2013). The agreement itself notes that the fund was created for the benefit of the *Peterson* plaintiffs, "and such other persons, entity or entities . . . to whom the Court directs that distributions shall be made." Agreement for the Peterson § 48B Fund Pursuant to 26 U.S.C. § 468B, ¶ 2.1, *Peterson v. Islamic Republic of Iran*, No. 10-cv-4518 (KBF) (S.D.N.Y. July 9, 2013), ECF No. 461 (the "Agreement").

The Agreement provides for the appointment of a Trustee to "pay or apply such part (or all) of the assets of the Fund in partial satisfaction of the claims of Plaintiffs against Defendants for compensatory damages, and to pay attorney's fees, costs and liens, in accordance with the executed Cooperation Agreement and the agreements between the Plaintiffs and their respective attorneys." Agreement, ¶ 3.1.3. The Agreement further provides that: "The Fund shall terminate upon the Fund's compliance with any court order that may be issued . . . or upon the fully payment of funds in accordance with the terms of section 3.1.3 hereof, and the payment from the assets of the Fund of all amounts necessary to compensate the Fund Trustee and its professional agents for unpaid services and costs of administration in accordance with the terms of section 3.1.2 hereof." Agreement, ¶ 3.3.

In short, the Agreement contemplates that monies held in the QSF trust are to be earmarked: (1) for the compensatory damages of the plaintiffs; (2) for the payment of attorney's fees in accordance with the various agreements between counsel, *inter se*, and between counsel and plaintiffs; (3) to compensate the Trustee and his assistants for their time and expenses; and (4) to pay any fees on the account into which funds are deposited or taxes which may be incurred. The Agreement makes no mention of funds to be allocated to compensate special masters. Indeed, any such disbursement would likely constitute an "alteration" requiring "an instrument in writing executed by the Fund Trustee and approved by the Court." Agreement, ¶ 3.4.

Plaintiffs' request that the Court order that the special masters be paid from the QSF trust is tantamount to asking this Court to unilaterally supersede the terms of the S.D.N.Y. order, and the Agreement itself, to impose non-negotiated terms and conditions on plaintiffs and plaintiffs' counsel. Given the express terms of the Agreement, and the ability of the parties here to amend the Agreement to allow for payment of special masters, the Court declines intervene.

**B. There is no basis warranting the imposition of sanctions against plaintiffs' counsel.**

Special Masters Ray and Kruger argue that this Court should instead require plaintiffs' counsel to compensate the special masters as a consequence of failing to file under 28 U.S.C. § 1605A. The masters cite this Court's inherent authority, as well as the broad discretion under Federal Rule 53(g) and 28 U.S.C. § 1920. However, this Court finds no basis in the record warranting the imposition of such sanctions.

**i.    Imposing sanctions under this Court's inherent authority would be improper.**

The special masters are correct that it is within this Court's prerogative to impose sanctions on a party for certain contumacious behavior.  On that score, courts have the inherent authority to sanction "the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and to impose sanctions against attorneys and their clients. *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)).  Similarly, under Rule 16(f)(2), "the district court is specifically authorized to impose . . . expenses, including attorney's fees, caused by unjustified failure to comply with discovery orders or pretrial orders." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984).  Even when confronted with conduct "sanctionable under the Rules [that] was intertwined within conduct that only the inherent power could address," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991), the Court is not limited to applying the pertinent rules or statutes "containing sanctioning provisions to discrete occurrences" before asserting its inherent authority to sanction the litigant's entire course of conduct.  *Id.*

This court's authority to impose sanctions is not, however, without limits.  Because "inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1475 (D.C. Cir.

1995).  For inherent power sanctions that are fundamentally penal, such as dismissals and default judgments, contempt orders, awards of attorneys' fees, and the imposition of fines, a district court must find clear and convincing evidence of misconduct. *Id.* at 1478.

Before determining whether there is clear and convincing evidence of misconduct here, this Court makes some prefatory observations.  First, it is highly questionable whether special masters Ray and Kruger possess the requisite standing to seek disgorgement from the *Peterson* attorney's fee award.  Both are quasi-judicial officers appointed pursuant to Rule 53.  Their sole allegiance is to the Court.  The special masters enjoy no formal relationship with the *Peterson* plaintiffs and counsel owes them no particular duty of care beyond assisting them in their endeavors.  Second, it can be argued that were federal courts intended to use Rule 53 as a vehicle to compensate special masters appointed under the FSIA, there would have been no need for Congress, in revoking 1605(a)(7), to have enacted 1605A(e) and provide for compensation from Victims of Crime Fund. Indeed, it can be further argued that compensating special masters in these circumstances under Rule 53 may yield the untenable result of rendering 1605A(e) superfluous. *See Zeigler Coal Co. v. Kleppe*, 536 F.2d 398, 409 (D.C. Cir. 1976) ("[A] statute should not be construed in such a way as to render certain provisions superfluous or insignificant.") (citing 2A D. Sands, SUTHERLAND STATUTORY INTERPRETATION § 46.06 (Rev.3d ed. 1973)).

The Court need not reach these issues, however, as it finds that plaintiffs' counsel, at no time, acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  As stated, the special masters advance the position that counsel's failure to follow the guidelines suggested by the court in the Omnibus Opinion was a "calculated" decision brought in "bad faith" and in derogation of court injunction.  Their argument is without support, and certainly does not pass the clear and convincing standard for the punitive relief sought.

- 14 -

At no time did this Court in its Omnibus Opinion order plaintiffs with litigation pending under the FSIA either to dismiss those actions rooted in 1605(a)(7) and re-file under 1605A or to seek reconsideration before this Court under Rules 59(e) and 60(b). The Court's holdings were not demands that counsel follow a prescribed litigation strategy. Rather, the Omnibus Opinion was "intended to serve a case management function in light of the significant changes in the law relating to these civil suits against Iran." *In re Islamic Republic of Iran Terrorism Litigation,* 659 F. Supp. 2d at 38. Commensurate with that function, the Court advised plaintiffs that Sections 1083(c)(2) and (c)(3) of the NDAA could provide vehicles for plaintiffs wishing to secure the additional relief afforded by 1605A. *Id.* at 71. On that score, this Court expressly cautioned counsel seeking to re-file new claims to proceed with care. *Id.* at 107. It further admonished those plaintiffs seeking reconsideration under Rules 59(e) and 60(b) of the need to adhere to the "60 day window of opportunity." *Id.* at 108. This Court empathizes with plaintiffs for whom the deadline for filing had passed, given "the lack of clarity with respect to the statutory language," *id.* at 94, which was "compounded by a lack of decisional law that might have otherwise aided counsel in their efforts." *Id.* at 108. But that lack of clarity may explain counsel's hesitance.

In the final analysis, this Court recognized that a decision not to pursue relief under 1605A may have stemmed from "strategic choices, misunderstandings of the law, tactical blunders or omissions, or other reasons" in addition to "misunderstanding or misapplication of the statutory language within § 1083." *Id.* at 108. Whether the conduct here was a strategic choice or a tactical blunder, it certainly does not rise to the level of bad faith when set against the backdrop of a statute the Court characterized as "hardly a model of clarity." *See United States v. Wallace*, 964 F.2d 1214, 1219 (D.C Cir. 1992) (holding that negligent or careless conduct "does not even reach the lowest of the possible thresholds—be it recklessness, deliberate indifference or some other

measure of vexatiousness"). This Court finds that the conduct of plaintiffs' counsel does not rise to the level of "bad faith" urged by the special masters.

**ii.    Similarly, this Court refuses to exercise its "broad discretion" in imposing a sanction or tax under Rule 53(g) or 28 U.S.C. § 1920.**

For the reasons discussed above, this Court finds it inappropriate to impose direct sanctions or taxes against plaintiffs' counsel for the payment of the masters. While 28 U.S.C. § 1920 grants this Court the broad discretion to tax the costs for the compensation of court appointed experts, this Court is unclear whether the special masters' role here qualifies. Even if it did, however, this Court finds it inappropriate to tax those costs on the prevailing plaintiffs or plaintiffs' counsel. This Court declines to impose such taxations under its statutory discretion.

Under Rule 53(g), the Court must fix the masters' compensation on the basis and terms stated in the appointing order. Fed. R. Civ. P. 53(g)(1). Indeed, this Court's Order [ECF No. 29] and Administrative Plan Governing Appointed Special Masters fixed the rate of compensation and stated that "payment is contingent upon receipt of funding from public or private sources." While the Court may set new basis and terms under certain conditions, the Court must allocate payment after considering "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Fed. R. Civ. P. 53(g)(3). This Court considers defendant Iran responsible, and refuses to set new terms which impose the costs of the special masters upon plaintiffs' counsel.

Therefore, this Court declines to exercise its discretion—either under the Federal Rules of Civil Procedure, federal statutes, or its inherent powers—in imposing sanctions or taxations on plaintiffs' counsel for the direct payment of special masters.

## V.   CONCLUSION

In sum, this Court declines to exercise its discretion under Rule 53(g) to impose the costs of the special masters upon the QSF trust, which was created for the benefit of plaintiffs and plaintiffs' counsel. Payment to the special masters is a wholly separate matter. While this Court has no reservations about imposing additional costs on defendant Iran, it would be improper for this Court to diminish plaintiffs' hard-won and long overdue compensation by requiring the QSF trust to make additional disbursements. That burden would not be borne by defendants, but by the plaintiffs and plaintiffs' counsel. This Court, while grateful for the hard work of the special masters, is unwilling to compensate the special masters at the expense of the plaintiffs here.

Similarly, this Court is unable to make a finding by clear and convincing evidence that plaintiffs' counsel committed sanctionable misconduct. There is nothing in the record indicating their decisions were not strategic or made in the best interest of their clients.  Whether those decisions ultimately inured to the detriment of the special masters does not render them sanctionable, *per se*. This Court declines to exercise its discretion in applying sanctions or taxations directly upon counsel.

For the foregoing reasons, the Court will **DENY** plaintiffs' Motion for Order Authorizing Payment of Funds for Compensation of Special Masters of this Court and **DENY** the relief requested in the Response of Special Masters Loraine Ray and Karen Kruger to Plaintiffs' Motion for Order Authorizing Payment of Funds for Compensation of Special Master of this Court to impose sanction on plaintiffs' counsel.

A separate order shall issue.

Royce C. Lamberth
United States District Judge

DATE: 12/15/16

- 17 -