**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **DEBORAH D. PETERSON** | : | |
| **PERSONAL REPRESENTATIVE** | : | |
| **OF THE ESTATE OF JAMES C.** | : | |
| **KNIPPLE (DECEASED), ET AL.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Consolidated Civil** |
| | : | **01-2094 (RCL)** |
| **v.** | : | **01-2684 (RCL)** |
| | : | **Hon. Royce C. Lamberth** |
| **ISLAMIC REPUBLIC OF IRAN,** | : | |
| **ET AL.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER AFFIRMING A COMMON LAW EQUITABLE LIEN OVER THE PLAINTIFFS' ATTORNEYS' 1/3 SHARE OF THE   RECOVERY AND FOR SEQUESTRATION OF THE DISPUTED PORTION**

Cyron & Miller
Wayne F. Cyron, Esq.
(DCB 356048)
100 N. Pitt Street, Suite 200
Alexandria, VA 22314-3134
(703) 299-0600
wcyron@cyronmiller.com

MillerHauser Law Group
Jerry R. Hauser
Eric D. Miller
790 Mission Avenue
San Rafael, CA  94901
(415) 485-2200

Folkenflik & McGerity
Max Folkenflik
Margaret McGerity
1500 Broadway, Ste 812
New York, NY 10036
212-747-0400

Attorneys for David J. Cook, Cook Collection Attorneys PLLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION .................................................................................................... 1

JURISDICTION ...................................................................................................... 4

FACTUAL BACKGROUND.................................................................................... 5

ARGUMENT............................................................................................................ 9

      A.     Cook's Retainer Agreement with the Litigation
             Attorneys Providing for his Contingent Fee to
             Be Paid From the Funds Recovered Establishes
             A Common Law Equitable Lien over Attorneys'
             Share ................................................................................................. 9

      B.     The Court Should Order the Litigation Attorneys
             To Sequester the Dispute Funds ...................................................... 12

      C.     The Litigation Attorneys Would Suffer No Prejudice
             From the Sequestration of Funds ..................................................... 13

CONCLUSION......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Barnes v. Alexander*
  232 U.S. 117 (1914) .................................................................................. 11, 13

*Bonell Produce Co. v. Chloe Foods, Inc.*
  No. 08-cv-4218, 2008 WL 4951942, at *4 (E.D.N.Y. 2008) .......................... 14

*Continental Casualty Co. v. Kelly*
  106 F. 2d 841 (D.C. Cir. 1939) ........................................................................ 5

*De Winter v. Thomas*
  34 App. D.C. 80 (1909) .................................................................................. 11

*Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n*
  941 F. 2d 1217 (D.C. Cir 1991) ...................................................................... 10

*Elam v. Monarch Life Ins. Co.*
  598 A. 2d 1167 (1991) .............................................................................. 10, 13

*Foltz v. U.S. News & World Report*
  760 F.2d 1300 (D.C. Cir. 1985) ...................................................................... 14

*Freidman v. Harris*
  158 F.2d 187 (D.C. Cir. 1946) .......................................................................... 5

*In re Finova Group, Inc.*,
  No. 07-cv-480, 2007 WL 3238764, (D. Del. Oct. 31, 2007) ............................. 14

*In re Wolf*
  558 B.R. 140 (E.D. Pa. 2016) ........................................................................ 14

*Martens v. Hadley Memorial Hosp.*
  753 F. sup. 371 (D.D.C. 1990) ........................................................................ 5

*Peterson v. Islamic Republic of Iran*
  220 F. Supp. 3d 98 (D.D.C. 2016) .................................................................... 1

*Pink v. Farmington*
  92 F.2d 465 (1937) ........................................................................................ 10

*Wolf v. Sherman*
  682 A.2d 194 (D.C. 1996) .............................................................................. 11

**Statutes**

District of Columbia Superior Court Rule 64(5) ............................................... 12

Federal Rules of Civil Procedure Rule 64 ........................................................ 12

**Other Authorities**

District of Columbia Bar Legal Ethics Committee Opinion 293 .................... 12, 13

District of Columbia Rules of Professional Conduct Rule 1:15 ..................... 12, 13

**INTRODUCTION**

David J. Cook and Cook Collection Attorneys, P.L.C. (collectively "Cook" ) were retained by a written retainer agreement  (the "Cook Retainer") signed by Lead Plaintiffs' attorneys Stephen Perles ("Perles") and Thomas Fortune Fay ("Fay"), on behalf of themselves and Lead Plaintiffs' Attorneys Anthony J. LaSpada and Allen L.  Rothenberg ("LaSpada" and "Rothenberg" and collectively with Fay and Perles the "Litigation Attorneys") to enforce this Court's $2.65 Billion judgment against the Islamic Republic of Iran.  Declaration of David J. Cook ("Cook Dec."), Exhibit 1.

Pursuant to the Cook Retainer, Cook successfully identified and restrained nearly $1.9 Billion of assets in the Southern District of New York fashioned *Peterson v. Islamic Republic of Iran*, No. 10-civ-4518 (KBF) (S.D.N.Y.) (the "SDNY Action"), which were recovered and turned over to a Trust for the benefit of Plaintiffs (the "QSF Trust").  After the turnover ruling was affirmed by the United States Supreme Court, Cook filed in this Court and then served upon the Trustee for the QSF Trust a notice of lien.

Cook's lien was quashed by this Court on December 6, 2016, because the Court held that the Cook Retainer could not be read to impose an obligation on the Plaintiffs to pay Cook's fee, but instead the agreement was between Cook and Fay and Perles.  *Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98, 109 (D.D.C. 2016).

On appeal, the Court of Appeals upheld this Court's ruling, but read it narrowly so as not to preclude this Court from granting Cook equitable relief, in the nature of sequestration or an other similar remedy, to secure Cook's interest in the funds currently held by the QSF Trust that are distributable to the Litigation Attorneys. [1]   The Circuit held:

> We do not, however, understand the district court to have decided whether to release directly to Fay & Perles the lawyers' third of the QSF—i.e. the portion of the judgment set aside to compensate Fay & Perles and anybody to whom they promised a share in exchange for work done for Plaintiffs. Affirmance that Glenn and Cook have no attorney's charging liens against **the portion of the judgment flowing to Plaintiffs simply does not address whether their claims are secured vis-à-vis Fay & Perles.** Fay & Perles inform us that they enlisted a "small army" of lawyers to labor on Plaintiffs' behalf, and that those lawyers signed on with the expectation that, if and when Plaintiffs' claims succeeded, they would be paid out of Fay & Perles's portion of the judgment. *See* Oral Arg. Rec. at 15:15-15:30. **Lead litigation counsel [John Vail] stated at oral argument that they have an "ethical duty . . . to sequester contested funds that are in their possession" until such disputes are resolved**. *Id.* at 37:45-38:00.
>
> Perhaps the district court has equitable authority to backstop those assurances. **Principles of equity in the District of Columbia may well recognize some or all of the other lawyers' rights to security in judgment proceeds flowing to Fay & Perles**. We do

---

[1] In a letter dated April 2, 2018 to Judge Forrest in the SDNY Action (SDNY ECF 916), counsel for the QSF Trustee informed the Court that 99% of initial distributions have been made to the Peterson Plaintiffs noting that the initial distributions constitute approximately 93% of the total amounts that will be available for payment to the Plaintiffs. The letter makes clear that the issues regarding the remaining distributions to the Plaintiffs are unrelated to the attorney fee claims. (Declaration of Eric D. Miller ["Miller Dec."] Exhibit 1).  At a hearing held before the Honorable Stephen J. Crane, (N.Y Sup. Ret.) in *Cook v. Fay*, JAMS REF. NO. 1100084466 (the Arbitration where Cook is seeking to recover his contractual fee right), the Litigation Attorneys stipulated that they would be solely responsible for payment of any award due Cook under his contract. On that basis, Cook dismissed the Plaintiffs with prejudice. (Miller Dec. ¶ 4, Exhibit 2)

not understand the district court to have broadly foreclosed any and all equitable grounds on which Glenn's and Cook's claims—or, indeed, those of any other lawyers similarly situated—might be secured pending resolution of their merits. **We need not and do not address any equitable claim beyond the assertion of an attorney's charging lien against claims set to be distributed to Plaintiffs themselves. The district court may, in its judgment, determine whether and how to address any such issue that remains**. [Emphasis Added]

*Peterson v. Islamic Republic of Iran*, 2018 U.S. App. LEXIS 4143 *20-21; *see, also,* D.C.C. Oral Argument Transcript, Miller Dec., Exhibit 3, p. 37:45-38:00.

This application is made following that implication by the Circuit, to obtain the equitable relief suggested.  The Litigation Attorneys have made indisputably clear that such relief is needed. After Mr. Vail represented at Oral Argument that the attorneys have "an ethical duty to sequester the disputed funds" he subsequently reversed himself.

 Shortly after the Circuit issued its opinion, Counsel for Cook wrote Mr. Vail and the other attorneys who represent the Lead Attorneys for the Plaintiffs a letter dated February 23, 2018 requesting verification that the attorneys had in fact sequestered the disputed amount of the fees from the $250 million in fees that had been distributed to them by the QSF Trustee in 2016[2] and requesting assurances that any shortfall would be sequestered from future distributions. (Miller Dec., Exhibit 5)

In his response letter dated February 26, 2016, (Miller Dec., Exhibit 6), Mr. Vail, (on behalf of Fay) declined to provide any assurances stating "Cook has

---

[2] In a letter dated January 13, 2017 (SDNY ECF 704) counsel for the QSF Trustee informed Judge Forrest that $250 Million of the attorneys' share had been distributed on November 24, 2016.  (Miller Dec., Exhibit 4)

3

no interest in the funds in the QSF and/or no entitlement to have them sequestered."

The Cook Retainer expressly provides that Cook's contingent fee is to be paid directly from the recovery. Further, well established common law equitable principles also support finding that Cook's fees should be secured by the attorneys' share of the funds recovered as a result of his efforts. Moreover, D.C. Rules of Professional Conduct, Rule 1.15(d) requires the Litigation Attorneys to sequester the funds disputed by Cook, further providing Cook with a beneficial interest in those funds.

For all of these reasons, Cook requests a determination that Cook has an equitable lien over the Litigation Attorneys' share of the funds recovered on the judgment. To enforce the lien, Cook requests that pursuant to FRCP Rule 64 the Court compel the Litigation Attorneys to sequester the amount in dispute, $127.5 million, from their share of fees to be distributed by the QSF Trustee to assure compliance with D.C. Rules of Professional Conduct Rule 1:15 (a), (b), and (d) and "backstop" Mr. Vail's representation until the entitlement and amount of Cook's fee are determined in the Arbitration proceeding[3]

## JURISDICTION

In its Memorandum Opinion dated December 6, 2016 (ECF 565), this Court recognized its "continuing jurisdictional basis premised upon this Court's

---

[3] The factual phase of the Arbitration was completed in December 2017 and all post hearing briefs have been submitted. A final award is due on or before June 20, 2018. (Miller Dec, ¶ 13)

inherent power to affect the distribution of judgment proceeds." *Martens v. Hadley Memorial Hosp.* 753 F. sup. 371 (D.D.C. 1990) (citing *Freidman v. Harris* 158 F.2d 187 (D.C. Cir. 1946); *accord, Continental Casualty Co. v. Kelly* . 106 F. 2d 841 (D.C. Cir. 1939) In its February 16, 2018 Judgment and Memorandum, the Court of Appeals suggested that this Court retained equitable powers to backstop the assurances of the Litigation Attorneys that the disputed funds would be sequestered.

## FACTUAL BACKGROUND

On March 5, 2008, Cook entered into the Cook Retainer with the Litigation Attorneys to assist in the collection of a default judgment in the amount of $2.65 Billion entered by this Court on September 9, 2007. Cook Dec., Exhibit 1. The Retainer Agreement expressly provided for a contingent fee payable out of the funds recovered as follows:

- "The Collection Service [Cook] shall charge a contingency fee of 10% of on any net recovery as received" p. 4

- "the Collection Service [Cook] shall bear all expenses...[t]o the extent of recovery by the Collection Service, the recovery shall first be subject to reimbursement of costs and expenses, and thereafter, subject to the fees due the Collection Service [Cook] p.3

- "The Collection Service [Cook] shall bear their own airfare, travel connections, Federal Express and related charges, in the prosecution of this matter: however, such reasonable charges shall be considered a cost, which will be re-paid to the Collection Service [Cook] from any recovery achieved herein." P. 5,6

- "In the event of collection, the funds shall be remitted to a joint escrow account from which the contracting parties will disburse funds as they deem fit, however, the Collection Service [Cook] shall be able to duct their fees and expenses before remitting the funds to Litigation Counsel"

p. 5

Based upon the record before this Court it cannot reasonably be disputed that Cook was the source of the funds recovered on the judgment.[4] On March 10, 2008, Cook issued a subpoena to the Office of Foreign Asset Control ("OFAC") seeking the identity of any accounts in the United States in which Bank Markazi, the central bank of Iran held a beneficial interest. (Cook Dec., ¶ 6, Exhibit 2) In response to the subpoena, OFAC filed a motion for an emergency motion for protective order with this Court on June 11, 2008 (D.C. ECF 325) The protective order was issued the same day.

Pursuant to the protective order, OFAC disclosed to Cook the existence of bonds in the amount of approximately $2.25 billion held in an account at Citibank in New York in the name of Clearstream Banking, S.A., ("Clearstream"). Within 48 hours of receiving the information from OFAC, Cook retained New York counsel in New York, Salon Marrow Dyckman Newman & Broady, LLP ("SMD") to obtain a Writ of Execution and have it served by the U.S. Marshal on Citibank which effectively restrained the assets. Within days thereafter, additional restraining orders were served pursuant to New York post-judgment remedies. Cook Dec. ¶¶ 6, 7.

Ultimately, on July 9, 2013, Judge Forrest ordered $1.89 billion in restrained assets at Citibank transferred to a QSF Trust for the benefit of the

---

[4] In Cook's Opposition to Motion to Quash dated 6/16/16, Cook submitted an unopposed declaration (D.C. ECF 543-3) establishing that he was the source of the $1.9 Billion recovered on the judgment.

Peterson Plaintiffs, their attorneys and other creditors who had contributed to the effort. (SDNY ECF 462; Miller Dec., Exhibit 7).

On December 4, 2017, a special master appointed by Judge Forrest to oversee the disputes over distribution of the QSF Trust fund filed a Report and Recommendation finding that Cook had no lien right under New York law and no right to intervene and that the Trustee should be authorized to distribute the remainder of the Litigation Attorneys' share of the funds. (SDNY ECF 869) Cook filed Objections on Constitutional and other grounds.  No ruling on the Report and Recommendation has been issued. [5]

The factual phase of the Arbitration between Cook and the Litigation Attorneys ended on December 11, 2017. On the last day of the Arbitration, the Litigation Attorneys stipulated on the record that they would be responsible for any arbitration award.[6]  On that basis, Cook dismissed with prejudice the Peterson Plaintiffs. (Miller Dec., ¶ 4, Exhibit 2)

On January 12, 2018, Cook submitted an application to the Arbitrator requesting an interim award ordering that the amount in dispute be escrowed pursuant to Paragraph 9 of the Cook Retainer which provides that "[I]n the event of any collection the funds shall be remitted to a joint escrow account." The Arbitrator denied the application without addressing the escrow clause of the

---

[5]  On April 4, 2018 Steve Perles filed a motion in the SDNY Action for prompt distribution of the remaining funds for attorneys' fees. (SDNY ECF 919; Miller Dec., Exhibit 8) Mr. Perles' declaration lists all of the lawyers that have been paid and will be paid directly from the QSF Trust fund.
[6]  Rothenberg entered into the Stipulation subject to his defense that he is not bound by the Retainer Agreement but if the Arbitrator determines that he is, he and not the Plaintiffs would be a responsible party for payment of the award.

Retainer Agreement. (Miller Dec., Exhibit 9, Arbitrator's January 31, 2018 Order No. 15.)  The Order stated that most pertinent among the reasons for the denial of the application was that Cook was attempting similar relief in the SDNY Action and in this Court and that if the Arbitrator were to grant the relief requested it would promote forum shopping.[7] The Arbitrator pointed to the fact that the parties were in the midst of preparing post-hearing briefs and that he had made no determination on the merits of the matter. (Miller Dec., Exhibit 9, p. 3)

On February 16, 2018, the Court of Appeals for the District of Columbia Circuit issued a judgment affirming this Court's Order quashing Cook's Charging Lien as against the Peterson Plaintiffs on the ground that only the Litigation Attorneys were parties to the Cook Retainer Agreement.  Yet, the DCC expressed its view that this Court might consider exercising its equitable powers over the Litigation Attorneys one-third share of the recovered funds to "backstop" the assurances of Mr. Vail that the Litigation Attorneys had an ethical obligation to sequester the funds.

The Cook Retainer provides for a fee of 10% of the total amount recovered. Based on the $1.89 billion recovery his 10% fee is $189 million subject to offsets to be determined by the Arbitrator. The only offset that is not in dispute is the 3.25% fee Cook agreed to pay SMD (Cook Dec., ¶ 1), who is being paid by the QSF Trustee. (Miller Dec., Exhibit 7)  Accordingly, Cooks' maximum recovery is 6.75% of the $1.89 billion recovery, $127.5 million.  (Cook Dec., ¶

---

[7] Cook made an earlier application seeking to restrain the funds in dispute which was denied.

10)  This is the amount in dispute subject to Cook's common law equitable lien that should be sequestered by the Litigation Attorneys pending the final arbitration award.

Mr. Vail's representation at Oral Argument of the attorneys' "ethical duty to sequester funds" is essentially a restatement of the requirement under D.C. Rules of Professional Conduct, Rule 1.15(d) which provides as follows:

> (d) When in the course of representation a lawyer is in possession of property in which interests are claimed by the lawyer and another person, or by two or more persons to each of whom the lawyer may have an obligation, the property shall be kept separate by the lawyer until there is an accounting and severance of interests in the property. If a dispute arises concerning the respective interests among persons claiming an interest in such property, the undisputed portion shall be distributed and the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. Any funds in dispute shall be deposited in a separate account meeting the requirements of paragraph (a) and (b).

(D.C. Rules of Professional Conduct, Rule 1.15, Miller Dec., Exhibit 10)

The QSF Trustee is currently holding $300,349,487.74 designated for the balance to be paid to the attorneys, but this does not include Cook. (SDNY ECF 919, Miller Dec. Exhibit 7) Of this amount the Litigation Attorneys will receive $207,715,611 to $242,325,527. *Id.*

## ARGUMENT

**A.**     **Cook's Retainer Agreement with the Litigation Attorneys Providing for his Contingent Fee to be Paid From the Funds Recovered Establishes a Common Law Equitable Lien over the Attorneys' Share**

In affirming this Court's decision, the Court of Appeals found that

"neither Glenn nor Cook has equitable grounds unilaterally to hold up full distribution to Plaintiffs as a means of obtaining leverage for this own fees and costs against Fay and Perles" *Peterson v. Islamic Republic of Iran*, 2018 U.S. App. LEXIS 4143 *20-21, p.5 but went on to state: "Affirmance that Glenn and Cook have no attorney's charging liens against the portion of the judgment flowing to Plaintiffs simply does not address whether their claim are secured vis-a vis Fay and Perles." *Peterson v. Islamic Republic of Iran*, 2018 U.S. App. LEXIS 4143 *20-21 p. 6.

A reading of *Elam v. Monarch Life Ins. Co.* 598 A. 2d 1167 (1991) in this context confirms that under D.C. law, in contingent fee agreements between attorneys a common law equitable lien is created where "it is reasonable to infer from the contingent agreement that the parties looked to the fund recovered as the source of the attorney's payment." pp. 1170, 1171  While *Elam* stated that it was indispensable that "there exist between the client and an attorney an agreement" that was  because the client was a contracting party and the lien claim was against the clients' funds.   See also, *Pink v. Farmington* 92 F.2d 465 (1937) [client contracting party and the lien claim against the clients' funds]; *Democratic Cent. Comm. of D.C. v. Washington Metro. Area Transit Comm'n* 941 F. 2d 1217,1220 (D.C. Cir 1991) [agreement with client indispensable where attorney seeking to recover on unsegregated funds which the client presumably had an interest in]. Here, the facts are distinguishable because all parties are in agreement that the security is not against the clients' share of the funds and is limited to the attorneys' share.

The common law is based on a "settled principle of equity that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property or fund a security for a debt or other obligation, creates an equitable lien on the property so indicated." *De Winter v. Thomas* 34 App. D.C. 80, 84 (1909). Contingent fee sharing agreements between attorneys should be treated no differently than any other creditors and debtors. *Wolf v. Sherman* 682 A.2d 194,198 (D.C. 1996) [In considering equitable and express liens, attorneys and clients should be no different from any other creditors and debtors] "The trend of the modern decisions… is to protect the right of the attorney to receive compensation for his services" *Id.* at p. 201

This settled principle of equity was followed by Justice Holmes in *Barnes v. Alexander* 232 U.S. 117 (1914) cited by *Elam v. Monarch Life*. There, the client promised his attorney one-fourth of any recovery. The attorney retained two other attorneys and promised them "one third of the fee which I have coming to me on a contingent fee from the [client]." Justice Holmes found that the sharing agreement between the attorneys was sufficient to create an equitable lien against the first attorney's one-fourth recovery. There was no suggestion in the opinion that the client was aware of the sharing agreement between the attorneys.

Here, this Court has determined that this was a contract between the attorneys and it cannot reasonably be disputed that the 10% contingent fee was be paid from the funds recovered. Accordingly, this Court should determine that a common law equitable lien over the Litigation Attorneys' share of the recovery

existed at least as of July 9 2013, the date Judge Forrest ordered the $1.9 billion recovery transferred to the QSF Trust for the benefit of the Plaintiffs and the attorneys.

**B.     The Court Should Order the Litigation Attorneys to Sequester the Disputed Funds.**

FRCP Rule 64 provides the District Courts with authority to use all available state remedies, including sequestration under District of Columbia Superior Court Rule 64(5), to secure the satisfaction of the potential judgment.

After volunteering at Oral Argument that the attorneys have "an ethical duty …to sequester funds in their possession" (Oral Argument, Miller Dec., Exhibit 3, p. 37:15-18) in an attempt to fend off questioning why no equitable lien should attach to the attorneys' share of the funds, Mr. Vail completely reversed his position in his letter of February 26, 2018 claiming that Fay and the other Litigation Attorneys had no such duty to sequester the disputed Cook funds in their possession. The conflicting positions cannot be reconciled.

Mr. Vail appears to argue D.C. Rules of Professional Conduct Rule 1:15 (a), (b), and (d) do not apply to the Cook disputed claim against the attorneys' share because the "the justness of [Cook's] claim, and particularly its magnitude [is] suspect" *citing* D.C. Bar Legal Ethics Committee Opinion 293. To the extent that Mr. Vail reads the opinion as requiring an evaluation of the merits of Cook's claim, that reading is inconsistent with settled law.  A lien acts as security for a debt, and its existence and validity are distinct from the merits of the debt itself. *See, Wolf v. Sherman* 682 A. 2d.194, 197 (D.C. 1996).

Rule 1.15(d) requires sequestration when a "lawyer is in possession of property in which interests are claimed by the lawyer and another person, or by two or more persons to each of whom the lawyer may have an obligation." Comments [7] and [8] provide explanation where the client is claiming part of the disputed fee or where the client may be attempting to interfere with a third-party claim. Those explanations have no relevance here because the clients have been paid and the claim is solely against the attorneys' shares of the recovery.

Moreover, Mr. Vail misreads the Ethics Opinion.  D.C. Bar Legal Ethics Committee Opinion 293 addresses "just claim" issues where the funds are subject to conflicting claims by both the client and a third party (or parties). Here, all parties are in agreement that the client has no interest in the disputed funds and that the Litigation Attorneys agreed that Cook's contingent fee would be paid from their share.

Where an attorney contracts for a contingent fee payable out of the fund recovered, an equitable lien attaches when the fund is recovered. *Elam v. Monarch Life Ins. Co.* 598 A.2d 1167 citing *Barnes v. Alexander* 232 U.S. 117, 121 (1914) [at the latest, the moment the fund was received the contract attached to it as if made at that moment).

### C.     The Litigation Attorneys Would Suffer No Prejudice From the Sequestration of Funds

Litigation Attorneys concede, as they must, that they have an ethical obligation to sequester funds recovered from the judgment to ensure that the other lawyers who labored on Plaintiffs' behalf with an expectation that they would be

paid from the funds are paid their fair share.

The Litigation Attorneys have received approximately 40% of their one-third share of the recovered funds from the QSF Trust and cannot claim hardship if they are required to sequester $127.5 million from the $207.7 to $242.3 million they are to receive pending the Arbitrator's ruling by June 20, 2018. The sequestered funds can be deposited in an interest bearing account so that any theoretically possible prejudice is avoided.

On the other hand, allowing the Litigation Attorneys to avoid sequestering the portion of the QSF payable to Cook under his contract prior to the Arbitrator's award will result in irreparable harm to him. "[W]hen an existing fund has been dedicated to satisfaction of competing claims, distribution of the fund before the court's determination is final and no longer subject to modification or reversal on appeal may constitute irreparable harm to the appellant." *In re Wolf*, 558 B.R. 140, 144 n.5 (E.D. Pa. 2016) *See also Foltz v. U.S. News & World Report*, 760 F.2d 1300, 1308 (D.C. Cir. 1985) (irreparable harm existed when vested interests in ERISA plan were at risk of dissipation); *In re Finova Group, Inc.*, No. 07-cv-480, 2007 WL 3238764, at *2 (D. Del. Oct. 31, 2007) (citing *Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077, 1086 (9th Cir. 2004)) (dissipation risk satisfies irreparable harm requirement); *Bonell Produce Co. v. Chloe Foods, Inc.*, No. 08-cv-4218, 2008 WL 4951942, at *4 (E.D.N.Y. 2008) (same).

In *Foltz* the D.C. Circuit expressly held that where a plaintiff is to be paid from a particular fund, the dissipation of the fund may cause irreparable injury:

The affording of such remedial relief would not run afoul of the well- settled principle of equity that monetary relief is not to be awarded in a money damages case prior to a determination of both liability and the extent of damages. *See Sims v. Stuart,* 291 Fed. 707 (S.D.N.Y.1922). As this litigation presently stands, there has been, of course, no determination of liability . . . *;* quite to the contrary, liability is vigorously contested by all defendants to this action. Notwithstanding that factor, an equitable remedy designed to freeze the *status quo,* as opposed to creating a pool of resources from which members of the plaintiff class could draw prior to a determination of liability and the extent, if any, of damages, would be entirely in keeping with the principles that undergird equity jurisprudence.760 F.2d at 1309.

The harm is real. If the funds are disbursed there is a substantial collection issue; Cook loses the right to enforce the escrow clause of his contract; and Litigation Attorneys would be allowed to not do the very thing they had assured the D.C. Court of Appeals they would do - sequester contested funds pending the adjudication of the Arbitration.

## CONCLUSION

Based on the foregoing, Cook requests that the Court issue an order affirming Cook's common law equitable lien over the Litigation Attorneys' share of the QSF Trust and order the Litigation Attorneys to sequester the disputed funds, $127.5 million, they receive from the QSF Trustee to be held in an interest

bearing escrow pending final resolution of the arbitration.

Respectfully submitted,

DATED: April 4, 2018          CYRON & MILLER, LLP


By: _/s/ Wayne F. Cyron_____
Wayne F. Cyron, Esq. (DCB 356048)
100 N. Pitt Street, Suite 200
Alexandria, VA 22314-3134
(703) 299-0600 (telephone)
(703) 299-0603 (facsimile)
wcyron@cyronmiller.com (e-mail)
Attorneys for Cook Collection
Attorneys, PLC and David Cook dba Cook
Collection Attorneys


DATED: April 4, 2018          MILLERHAUSER LAW GROUP, LLP

By: _/s/ Jerry R. Hauser_____
Jerry R. Hauser (CA SB 111568)
790 Mission Avenue
San Rafael, CA  94901
(415) 485-2200 (telephone)
jhauser@millerhauser.com (e-mail)
Attorneys for Cook Collection
Attorneys, PLC and David Cook dba Cook
Collection Attorneys


DATED: April 4, 2018          MILLERHAUSER LAW GROUP, LLP

By: _/s/ Eric D.  Miller_____
Eric D. Miller (CA SB 106956)
790 Mission Avenue
San Rafael, CA  94901
(415) 485-2200 (telephone)
emiller@millerhauser.com (e-mail)
Attorneys for Cook Collection
Attorneys, PLC and David Cook dba Cook
Collection Attorneys

DATED:  April 4, 2018               FOLKENFLIK & MCGERITY, LLC

                                    By:  _/s/ Max Folkenflik_____
                                    Max Folkenflik
                                    Margaret McGerity
                                    1500 Broadway, Ste 812
                                    New York, NY 10036
                                    212-747-0400
                                    Attorneys for Cook Collection
                                    Attorneys, PLC and David Cook dba Cook
                                    Collection Attorneys

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AFFIRM A COMMON LAW EQUITABLE LEIN OVER ATTORNEYS' 1/3 SHARE OF THE RECOVERY** AND FOR SEQUESTRATION OVER THE DISPUTED PORTION was filed electronically via the Court's ECF system on April 4, 2018 and were served electronically at the time on all counsel of record, all of whom are registered to receiving filings via the Court's ECF system.

By: _/s/ Eric D. Miller_
Eric D. Miller